The Throop Grain Cleaner Company et al., Respondents, *v.* H. Cordenio Smith, Appellant.

The equity of creditors to set aside a transfer by the debtor on the ground that it was made to hinder delay or defraud them is not the subject of levy under an attachment; the question of the *bona fides* of the transfer can only be raised by a judgment-creditor

Where, therefore, a debt claimed to be due to the debtor is attached by a creditor and it is claimed by the person owing the debt that it was assigned before service of the attachment, the question simply is as to whether there was a transfer valid in law; it may not be assailed because of bad faith.

While the mere delivery to a third person of a check or draft drawn by a creditor upon his debtor does not affect a legal transfer of the debt, where it appears that the intent was to make such a transfer, it is the duty of the court to carry out the intent.

A. & Co. and the defendant entered into a contract for the sale, by the former to the latter, of certain machinery to be delivered on board of cars and paid for on receipt. After the goods had been manufactured and shipped and a portion had reached their destination, A. & Co., who were indebted to the F. Co. in an amount exceeding the contract liability, drew drafts in favor of that company upon defendant for the amount thereof and transmitted the same to the F. Co., writing the company that the drafts were for the amount due from defendant: that they had charged the amount to it in general account, and requesting it to credit the same in their account and to collect, adding. "Please have no error in receiving and treating the drafts as belonging to you." The F. Co. replied, acknowledging receipt and stating that it had sent the drafts forward for collection; it entered them in its bill-book as drafts due to it from defendant. A. & Co. advised defendant that they had assigned their account against him to the F. Co. and requested him to honor drafts when presented. The F. Co. also advised defendant that it had credited the drafts on A.'s account. Plaintiff thereafter, in an action against A. & Co., attached the debt. *Held*, the correspondence showed that the drafts were sent forward as representing the indebtedness of defendant to A. & Co. and that their delivery and acceptance was intended to carry with them the debt, and so constituted an equitable assignment thereof, for which the agreement to credit constituted a valuable consideration.

Also, *held*, that the action of the parties in permitting A. & Co. to allow the amount of a counter-claim made by defendant after the alleged transfer, but before the attempted levy, did not affect the validity of the transfer· also, that it was immaterial whether the F. Co. actually credited the amount of the drafts in its books of account.

(Argued April 25, 1888; decided June 12, 1888.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made the first Tuesday of January, 1886, which reversed a judgment in favor of defendant and granted a new trial.

This action was brought in aid of an attachment in pursuance of section 677 of the Code of Civil Procedure, to recover a demand alleged to be due the firm of Allis & Co. from defendant and to have been attached in an action by the plaintiff against said firm.

The material facts are stated in the opinion.

*M. M. Waters* for appellant. An account may be sold like a chattel. Any agreement which will pass the title to a chattel will pass the title to an account. (*Truax* v. *Slater*, 86 N. Y., 630.) Acceptance will often be implied from the silence of the party to whom the offer is made, and also from his acts. (Story on Sales [2d ed.] § 132.) The assent of parties to a sale may be implied from their subsequent conduct. (Benj. on Sales, § 38.) The acceptance of an offer may be signified by performance alone. (*Patton* v. *Hassinger*, 69 Penn. 311; *Cooper* v. *Altimus*, 62 N. C. 743; *Lungstrass* v. *Ins. Co.*, 48 Mo. 200; *Fenton* v. *Broden*, 2 Cranch C. C. 550.) There is a binding agreement when the minds of two persons meet, as signified by acts, although both do not know of such concurrence at the time. (Hilliard on Sales [2d ed.] § 132.) The mere possession of the drafts by the Farrell Company would, of itself, *prima facie*, import ownership, and the acquisition of the same in good faith in the usual course of business. (1 Dan. Neg. Inst. § 812.) In the absence of anything to the contrary, it would be presumed, in law, that the drafts were received in payment, on account of the indebtedness then existing, and not as collateral merely, or for collection. (11 Dan. Neg. Inst. §§ 1259, 1271.) A bill of exchange for part of a debt or fund is not an assignment *pro tanto*, unless accepted. (*Brill* v. *Tuttle*, 81 N. Y. 457; *Attorney-General* v. *Life Ins. Co.*, 71 id. 325.) A bill for the entire amount of a debt or fund should operate as an equitable assignment thereof. (1 Dan. Neg. Inst. § 30.)

*Rollin Tracy* for respondents. The claims involved were of the character contemplated by, and the proceedings had were in exact conformity to the requirements of the provisions of the Code. (*Bills* v. *Nat. Bank*, 89 N. Y. 343; *Gibson* v. *Nat. Park Bank*, 98 id. 87; *Bowie, Sheriff* v. *Arnold*. 31 Hun, 239; *Hall* v. *Brooks*, 23 id. 577; *Anthony* v. *Wood*, 29 id. 239; *Green* v. *Stern*, 1 City Ct Rec. 460; *Kelly, Sheriff*, v. *Brensig*, 33 Barb. 123; *Merchants and Traders' Bk.* v. *Dakin*, 50 id. 587: *Lansing, Sheriff*, v. *Streeter*, 57 id. 33.) There was no assignment or transfer of the claim at the time the attachment was levied, as matter of law. (*Stalker* v. *McDonald*, 6 Hill, 93; *Bank of Salina* v. *Babcock*, 21 Wend. 499; *Bank of Sandusky* v. *Scoville*. 24 id. 115; *Torley* v. *Lee*, 12 N. Y. 551, 555; *Van Heusen* v. *Radcliff*, 17 id. 580, 583; *Phœnix Ins. Co.* v. *Church*, 81 id. 218, 222.) There was no assignment or transfer of the claim at the time the attachment was levied, as matter of fact, and this question should have been submitted to the jury. (*Bill* v. *Park Nat. Bk.*, 89 N. Y. 343; *Gibson* v. *Nat. Park Bk.*, 98 id. 87; *Sidenbach* v. *Riley*, 2 How. [U. S.] 143; *Blant* v. *Gabler*, 77 N. Y. 461; *Juilliard* v. *Chaffee*, 92 id. 537; *Powell* v. *Powell*, 71 id. 71; *Brill* v. *Tuttle*, 81 id. 454; *Ehrics* v. *De Mill*, 75 id. 320; *Risley* v. *Smith*, 64 id. 576; *Gallager* v. *Nichols*, 61 id. 435; *Munger* v. *Shannon*, 61 id. 251; *Shaver* v. *West. Union Tel. Co.*, 57 id. 459; *Attorney General* v. *Conn. Life Ins. Co.*, 71 id. 325.) The question should have been submitted to the jury, whether, if a transfer of the claim had been made, it was made in good faith or fraudulently, and for the purpose of defrauding the plaintiff in the attachment. (*Lansing* v. *Streeter*, 57 Barb. 33; *Merchants and Traders' Bank* v. *Dakin*, 50 id. 587; *Anthony* v. *Wood*, 29 Hun, 239; *Klinck* v. *Kelly*, 63 Barb. 622, *Rinchey* v. *Stryker*, 28 N. Y. 45; *Thurber* v. *Blank*, 50 id. 80; *Castle* v. *Lewis*, 78 id. 131; *Anthony* v. *Wood*, 96 id. 180; *Gibson* v. *Nat. Park Bank*, 98 id. 87; 89 id. 343; *Anderson* v. *Hun*, 5 Hun, 351; *Raymond* v. *Richmond*, 78 N Y. 351; *Turrie's Case*, 1 Smith's L. C., 1 and notes.) The

claim was properly attached by leaving a certified copy of the warrant and notice showing the property attached with Smith. (Code Civ. Pro. § 649, subd. 3.) The answer sets up, as new matter, the transfer and alleges that it was made in good faith and for a valuable consideration. This issue the defendant was bound to sustain by evidence. (*Gibson* v. *Nat. Park Bank*, 98 N. Y. 87; *Harb* v. *Ten Eyck*, 3 Johns. Ch. 62, 89; *Throop, etc.,* v. *Smith*, 34 Hun, 91.) The action should be sustained, for the facts appearing in the proofs establish a fraudulent transfer of the claim. (Code Civ. Pro. § 820; *Steuben Co. Bk.* v. *Alberger*, 56 How. 345; *Bills* v. *Nat. Park Bank*, 89 N. Y. 343; *Johnston* v. *Stimmel*, 89 id. 117; *B. & O. R. R. Co.* v. *Arthur*, 90 id. 243.)

RUGER, Ch. J. Assuming that the proceedings by which the plaintiffs attempted to secure a lien by attachment upon the debt alleged to be due from the defendant to E. P. Allis & Co. were regular and valid, we are brought directly to the real question in the case, viz., whether, at the time of such levy the debt attempted to be levied upon, was then due to Allis & Co., or had been previously transferred by them to the Farrell Foundry and Machine Company.

Both Allis & Co. and the Farrell Company were non-residents of this state, Allis & Co. residing at Milwaukee, in the state of Wisconsin, and the Farrell Company in the state of Connecticut. The Throop Grain Cleaner Company and H. Cordenio Smith both resided in this state. The attachment referred to was issued, in an action in the Supreme Court of this state, between the Throop Grain Cleaner Company, plaintiff, and Allis & Co., as non-resident defendants, and jurisdiction is claimed to have been acquired by the court in that action upon the allegation that Allis & Co. had property in the state subject to levy under attachment. The only property of that character claimed to exist was the alleged indebtedness of Smith to Allis & Co. The attempted levy under the attachment was made on May 21, 1881. It is contended by the defendant that previous to that time Allis & Co.

had transferred their debt against him to the Farrell Com pany, and that at the time of such levy it was a debt owing by him to the Farrell Company.

The trial court held, as matter of law, that the debt had been transferred previous to the levy and, therefore, nonsuited the plaintiffs. One of the main questions litigated upon the trial was whether the alleged transfer by Allis & Co. was made with the intent and design on their part, of defeating an intended levy upon such debt by the plaintiffs. If this were proved, it was contended by the plaintiffs that the alleged transfer would be fraudulent and void as to them.

It may be assumed that such was the intent of Allis & Co., without affecting the result of this action, for the plaintiffs do not occupy a position which enables them to raise any question as to the *bona fides* of such transfer. This can be done only by a judgment-creditor in an action to enforce the equity of the creditors of Allis & Co. (*Anthony* v. *Wood,* 96 N. Y. 180; *Gibson* v. *National Bk.,* 87 id. 96.) This equity was not the subject of a levy under an attachment, even if an attempt had been made to effect it. We may, therefore, in the further consideration of the case, lay out of view all of the evidence tending to show that the attempted transfer was made in bad faith, as it has no bearing upon the real issue. The plaintiffs, however, upon the trial requested to be allowed to go to the jury on the question of fact as to whether the evidence showed a valid transfer of the debt prior to the attempted levy. This was refused by the trial court, and the plaintiffs duly excepted to its ruling.

The General Term was of the opinion that the evidence did not show, as matter of law, that a transfer had taken place. There was no conflicting evidence upon the question of the alleged sale, as it was effected entirely by written correspondence, and if a contract was thereby made, free from latent ambiguity, or language of doubtful signifi-cance, a question of law is presented for the consideration of the court, and not a question of fact for the jury. (*Dwight* v. *Germania Ins. Co ,* 103 N. Y. 341.)

This question must be determined from an examination of the correspondence passing between the parties, their relation to and the circumstances surrounding the transaction at the time of the making of the alleged contract, and the acts of the parties in consummating the sale prior to the attempted levy  No claim is made here that the mere delivery to a third person of a check or draft, drawn by a creditor upon his debtor. effects a legal transfer of the debt, but it is contended that the correspondence accompanying the transfer of certain drafts, discloses an intention to effect thereby a transfer of the debt referred to in such correspondence.      That an equitable assignment of an account may be effected in this way, even though it is not referred to in the draft or order, admits of no doubt.      Thus it was held in *Risley* v. *Phenix Bank* (83 N. Y. 318), that the delivery by a creditor of a check or draft upon his debtor for the whole, or a part of a debt, to a payee therein named, to enable him more conveniently to recover such debt, does not preclude such payee, in an action against the debtor, from showing a parol contract, aside from the check or draft, to transfer the debt itself.      It was also said in the same case that "an assignment of an account may be made without writing, or delivery of any written statement of the claim assigned, so as to vest in the assignee a right to proceed in his own name for the recovery of the debt, provided only that the assignment is founded on a valid consideration between the parties."

The sole question, therefore, presented in this case is, whether the evidence shows a valid contract as between Allis & Co. and the Farrell Company for a transfer of the claim in question, and, if it appears therefrom that it was their intention to transfer such debt, it is the undoubted duty of the court to carry out such intention.      The debt arose out of a written contract between Allis & Co. and the defendant, made April 4, 1881, whereby Allis & Co. agreed to sell and deliver to him, free, on board cars at Milwaukee, a certain quantity of milling machinery consigned to Smith at Marcellus, N. Y., to be paid for on receipt of goods.      These goods were all manufactured

and shipped, and many of them had arrived at their destination before the time of the attempted levy, and the liability of Smith to pay for them had become fixed by their delivery on the cars. (*Smith* v. *Edwards*, 29 Hun, 493.) On the 10th day of May, 1881, Allis & Co., who were then indebted to the Farrell Company in an amount exceeding the contract liability of Smith to them, made their two sight drafts in favor of the Farrell Company upon Smith for the sums of $1,050 and $2,800, respectively, being the precise amount due upon the contract, and transmitted the same to the Farrell Company in a letter of which the following is a copy:

" Milwaukee, *May* 10, 1881.

" Farrell Foundry and M. Co., *Ansonia, Conn.*:

" We inclose two drafts on H. C. Smith of Marcellus Falls, the one $2,800, the other $1,050, which kindly *credit to our account*. The $2,800 will be paid as soon as the rollers for which you have order, are delivered at Marcellus Falls. The other is now due. Kindly acknowledge. .

" Yours, truly,

" E. P. ALLIS & CO."

By letter of the same date they also advised the Farrell Company that " our people to-day send drafts on Smith *for amount due from him*. We charge the amount to you in general account, and want you to *credit the same and collect it*. Please have no error in receiving and treating the drafts as belonging to you." These letters were apparently received at the same time by the Farrell Company and must be treated together as parts of the same transaction, and expressing the conditions upon which the drafts were transmitted.

On the thirteenth of May, thereafter, the Farrell Company replied to such letters as follows: " Yours of the tenth at hand. We have sent the two drafts on H. C. Smith *forward for collection* and will ship his rolls next week; will report when drafts are paid. Have written him to honor $1,050, and to ask bank to hold the other until rolls arrive." They also

entered the drafts in their bill-book as drafts due to them from Smith. Allis & Co. also on May 10, 1881, advised Smith, the debtor, by letter that they had that day "*Assigned our account against you to the Farrell Foundry and Machine Company* of Ansonia, Connecticut. You will kindly honor their drafts when presented." On the 19th day of May, 1881, the Farrell Company advised Smith that they "had credited the drafts on his (Allis) account, *they became ours*, so we cannot see the least risk in your paying us and would like New York drafts for the amount as you and he agree." These letters constitute the whole correspondence between the parties in relation to the sale of the demand, and from which it must be determined whether such sale was thereby effected. This correspondence does not seem to us to be susceptible of any other construction than that the drafts were sent forward as representing the indebtedness of Smith to Allis & Co., upon a contract obligation, partly due and partly to become due thereafter, and for the purpose only of facilitating the collection of the amount owing by Smith. We think that this constituted an equitable assignment of the fund in question under our decision in *Brill* v. *Tuttle* (81 N. Y. 454).

It can hardly be supposed that the parties intended to go through an idle ceremony, such as the mere delivery of an unaccepted draft would imply; but it was intended thereby to effect the substitution of the liability of a third person to the Farrell Company in place of that of Allis & Co. Thus Allis & Co. say, "we have sent you drafts on H. C. Smith *for amount due from him* and want you to credit the same to us and collect it." This language can mean nothing else than that they intended to transfer a debt due them from Smith, and required the Farrell Company to collect such debt from Smith. This could only be effected by the ownership of the debt represented by the drafts.

No liability from Smith to Allis & Co. then existed, except the contract obligation to pay for the machinery when received. There was no other transaction to which the correspondence could apply, and the amount of the drafts corresponded pre-

cisely with that of the contract obligation. The $1,050 was stated to be for property already received by Smith, and the $2,800 draft represented machinery which the Farrell Company were to ship to Smith upon Allis & Co.'s previous order. Smith was not liable upon the drafts, either to Allis & Co. or the Farrell Company, until they were accepted by him and when they were delivered to the Farrell Company, unless they represented the contract obligation of Smith to Allis & Co., they had no pecuniary value whatever. It would be quite absurd to suppose that Allis & Co. intended by the transaction to sell only their obligation upon the drafts as the makers thereof, or that the Farrell Company supposed they were buying one written obligation of Allis & Co. to apply upon another for the same debt. That it was the intention of Allis & Co to transfer the debt which Smith owed them is clearly shown, not only by their simultaneous notice to Smith° of the assignment of the account, but also by the terms of the letters to the Farrell Company accompanying the drafts in which they request them to *credit the amount to Allis & Co. on account*, which plainly implies the transfer of value as the basis of the requested credit. It is clearly implied that the drafts represent an amount due from Smith to Allis & Co. on account for machinery sold and the expectation, if the Farrell Company accepted their offer, that they would credit the amount on Allis & Co.'s account, and assume the collection of the claim by whatever means were necessary to accomplish that object. This implication is emphasized by the injunction that they wished no error made by the Farrell Company in "receiving and treating the drafts as belonging to" the Farrell Company. The answer to their propositions expresses no dissent from any of them, but assumes their acceptance and asserts the intention of the proposed transferees to act upon the assumption of their ownership of the claim due from Smith. They say "the drafts are received and we have forwarded them for collection." This seems to us to constitute an unqualified acceptance by the Farrell Company of Allis & Co.'s proposition. The statement that the Farrell Com-

pany had forwarded the drafts for collection does not qualify their acceptance in any degree, for that was just what Allis & Co. proposed they should do, and they had no right to send the drarts forward except upon the terms imposed in Allis & Co.'s letters, requiring that they should be credited to Allis & Co., and should be collected by the Farrell Company as the owners of the claim represented by them. The Farrell Company had no right to collect the drafts on account of Allis & Co., for this was impliedly forbidden by the instructions accompanying the drafts. If they were not willing to credit the amount to Allis & Co. in accordance with the terms of the proposition, they had no authority to use the drafts for any purpose, and the use of the drafts by them was the equivalent of an express acceptance ot the terms under which they were transmitted. They could not vary the contract proposed to be made by Allis & Co., except with their assent, and this they never received.

What the Farrell Company intended by their letter is clearly shown by their letter to Smith of May nineteenth, in which they say they had credited Allis & Co. with the amount of the drafts and that they had become their property. It was not essential to a valid transfer of this debt that Smith should assent to it, as it could be effected by contract between the creditor and his transferree alone, but nothing was left undone by either party to protect the Farrell Company's rights, as the actual owners of the debt against Smith. Smith could not, after notice from both Allis & Co. and the Farrell Company, of the assignment of the debt, safely pay the same to any party but the Farrell Company, and such payment would have been a full satisfaction of his liability to Allis & Co. (*Freund* v. *Importers and Traders' Bk.*, 76 N. Y. 352.) The implication is irresistible, from the conduct of the parties and the language of their correspondence, that they all understood that the delivery and acceptance of the drafts was intended to carry with them the debt which they represented, and, we think it would be doing violence to the intent of the parties to hold otherwise.

We have not been able to discover in the evidence, any fact or reasonable inference to be drawn therefrom, conflicting with the views above expressed.   The action of the parties in permitting Allis & Co. to allow the amount of a counter-claim made by Smith, after the alleged transfer has, we think, no bearing upon the validity of the previous transfer.   It was entirely competent for the parties by consent to make such deduction, and it was proved that this was done by virtue of an agreement of the Farrell Company, Smith, and Allis & Co., before the attempted levy by the plaintiff.   Neither was it of any consequence whether the Farrell Company actually credited Allis & Co. with the amount of the drafts in their books of account.   If they, in fact, bought the demand of Allis & Co. before the attempted levy, it was entirely unimportant whether they entered the credit in their account books. They would still be liable to pay for their purchase as they had agreed to do.   If there had been any doubt as to when the contract of sale had been consummated, this evidence might have affected that question, but no question arises but that the whole correspondence relating to the transfer, had been completed before the attempted levy.   The statement in the Farrell Company's letter that they had forwarded the drafts for collection, is not only not inconsistent with the theory of a sale, but is notice to Allis & Co. that they had acted on the latter's proposition, and can be interpreted only as meaning that they had forwarded them under the terms imposed by Allis & Co.'s letter transmitting the drafts.

We are, therefore, of the opinion that the case presented no question of fact which required submission to the jury. We find no exception in the case authorizing the plaintiffs to raise any question under the statute of frauds as to the validity of the transfer of the account in question, and we are, therefore, of the opinion that such point was not available to them. (*Bommer* v. *Am. Spiral, etc., Hinge Co.,* 81 N. Y. 468.)   Even if raised, the contract of sale having been made in another state, our statute would probably have been inapplicable. ( *Wilcox Silver Plate Co.* v. *Green,* 72 N. Y.

17.) Neither can any question arise in this case with reference to the sufficiency of the consideration agreed to be paid by the Farrell Company upon the transfer of the debt, for as between the parties, an agreement to credit it upon a precedent debt is a valuable consideration.

We are, therefore, of the opinion that the order of the General Term should be reversed, and judgment rendered for the defendant, upon the order of the trial court, nonsuiting the plaintiffs, with costs.

All concur.

Judgment accordingly.