NEW YORK LIFE INSURANCE COMPANY v. PATTERSON &
WALLACE ET AL.

Decided April 13, 1904.

**Bank Draft—Assignment of Deposit—Garnishment.**

Evidence considered and held to show an assignment of a bank deposit by the execution by the depositor of a draft thereon as payment on an existing indebtedness, as against garnishment served at suit of other creditors of the depositor after the execution of the draft and before presentation and acceptance.

Appeal from the District Court of Dallas. Tried below before Hon. Richard Morgan.

*Crane, Greer & Wharton,* for appellant.

*Burgess & Burgess,* for appellees.

EIDSON, ASSOCIATE JUSTICE.—Appellant sued C. T. Richardson and others in the District Court of Dallas County, in cause No. 21,908, for the sum of $25,000, and on the 7th day of November, 1902, made application for a writ of garnishment in the usual form against the American National Bank of Dallas, alleging that Willis Meredith, one of the defendants in cause No. 21,908, who had been using a number of aliases, among others that of W. Mannering or Ward Mannering, had funds deposited in the said American National Bank. The writ of garnishment was issued and served on the bank the same day.

The American National Bank answered, in substance, that it had funds in hand amounting to $283, which said Ward Mannering had placed in its vaults as a general deposit. It also alleged that Patterson & Wallace, a firm composed of C. B. Patterson and George E. Wallace, of the county of El Paso, State of Texas, claimed that the amount deposited by the said Ward Mannering, or some portion thereof, belonged to them. The bank then asked that Patterson & Wallace be made parties, and the question settled as to the ownership of the funds.

Patterson & Wallace filed their plea of intervention on April 6, 1903, claiming $275 of said funds in said American National Bank, by reason of an alleged assignment thereof to them, made by the said Ward Mannering on the 6th day of November, 1902.

The only question in the case is as to whether the evidence supports the judgment of the court below. The case was submitted to the court without a jury, and the following facts were agreed to and proven:

"1. That the New York Life Insurance Company has a valid judgment against Ward Mannering for a sum largely in excess of the money admitted by the garnishee to be in its hands, to wit, for the sum of $25,000, and that the writ of garnishment served on the garnishee was issued out of the case in which said judgment was rendered.

"2.   That on November 6, 1902, Ward Mannering was under arrest in El Paso, Texas, charged with criminal offense against the laws of the State. That Patterson & Wallace were and are practicing attorneys at El Paso, Texas, and as such were on said date employed by the said Ward Mannering to defend him against said criminal charge.

"3.   That on said date the said Ward Mannering executed and delivered to the State National Bank of El Paso, Texas, the following draft: '$250. El Paso, Texas, Nov. 6, 1902.—At sight, pay to the order of the State National Bank of El Paso, Texas, two hundred and fifty dollars, value received, and charge to account of, with exchange. Ward Mannering.   To American National Bank, Dallas, Texas.'

"That said draft was by said Ward Mannering delivered to his said attorneys, Patterson & Wallace, and was by said attorneys delivered to the State National Bank of El Paso.

"4.   That after the execution and delivery of said draft, the State National Bank of El Paso sent the following telegram to the American National Bank at Dallas, Texas, to wit: 'El Paso, Texas, November 6, 1902.—Am. Nat. Bank, Dallas, Texas: Will you pay draft on you by Ward Mannering for two hundred and fifty dollars? (Signed) State Nat. Bank.'

"5.   That said telegram was received by the American National Bank at Dallas, Texas, at 12:52 p. m., November 6, 1902.   And said American National Bank at 1 p. m. on the same date replied thereto by telegram, as follows: 'Dallas, Texas, November 6, 1902.—State National Bank, El Paso, Texas: Ward Mannering's account is good now for two hundred and eighty-three dollars.   The Am. Nat. Bank.'

"That said last telegram was received by the State National Bank at El Paso, Texas, on the afternoon of the same day it was sent.

"6.   That after the receipt of the said telegram by the State National Bank, the said Ward Mannering executed and delivered to the said State National Bank another draft for the sum of $25, and delivered the same to the said Patterson & Wallace, as the first, and which said draft was by the said Patterson & Wallace delivered to the said bank, and is as follows: '$25. El Paso, Texas, Nov. 6, 1902.—At sight pay to the order of the State National Bank of El Paso, Texas, twenty-five ($25) dollars, value received, and charge to account of, with exchange.   Ward Mannering.   To American National Bank, Dallas, Texas.'

"7.   That on the said 6th day of November, 1902, and about one hour after the said American National Bank had sent to the State National Bank the telegram above quoted, the said American National Bank sent to the State National Bank a second telegram, stating, in substance, that it had learned that a writ of garnishment would probably be served upon it in behalf of the New York Life Insurance Company and against the said Ward Mannering.

"8.   That on the evening of the 6th day of November, 1902, the State National Bank of El Paso forwarded, by due course of mail,

the two drafts above described to the American National Bank at Dallas for payment, and that the said drafts reached the American National Bank at Dallas on the morning of November 8, 1902.

"9.   That on the 7th day of November, 1902, the writ of garnishment under which the New York Life Insurance Company claims the money in this case was served upon the garnishee, the American National Bank, the said drafts being then in transit by the United States mail, at some point between El Paso, Texas, and Dallas, Texas.   That on the morning of November 8, 1902, when said drafts reached the American National Bank at Dallas, and were presented, payment thereof was refused by the said bank, because the writ of garnishment issued in this cause had been served upon it the day before, and said drafts were duly protested for nonpayment and returned to the State National Bank at El Paso, Texas, the protest fees upon each draft amounting to $3.54, or a total of $7.08, which was paid by Patterson & Wallace. That after said protest and after the return of said drafts to the State National Bank, it indorsed the same as follows: 'Pay to the order of Patterson & Wallace, without recourse.   State National Bank, by Cashier;' and thereafter delivered same to said Patterson & Wallace.

"10.   As to the question of the intention of the said Ward Mannering in the execution and delivery of said drafts to the State National Bank, and as to whether it was the intention of the said Ward Mannering to thereby assign said funds in the said American National Bank to said Patterson & Wallace, no agreement is reached herein. But depositions may be taken upon that point, subject to all objections by the New York Life Insurance Company, except such as may be specially waived upon the interrogatories, in answer to which the depositions are to be taken.   And after that shall have been done, the following questions will be submitted for the decision of the court:

"Did the execution and delivery of the drafts aforesaid, under the circumstances above recited, and their being forwarded to Dallas, supplemented by the facts stated in the depositions, constitute an assignment of said funds in the American National Bank to the said Patterson & Wallace; and did it constitute an appropriation of the same to the payment of the said drafts, or did the New York Life Insurance Company, by service of the writ of garnishment upon the American National Bank, under the circumstances stated, give to it the superior right to the money then in the hands of the said bank, to be applied upon its judgment against the said Ward Mannering?

"April 13, 1903.   The New York Life Insurance Company, Plaintiff, by Crane, Greer & Wharton, Attorneys.   Patterson & Wallace, by Burgess & Burgess, Attorneys.

"L. M. Turner, a witness for the interveners, Patterson & Wallace, testified that he was receiving teller of the State National Bank of El Paso, Texas, on the 6th day of November, 1902, and that he knew the firm of Patterson & Wallace, though he did not know Ward Mannering; that Wallace was a customer of the bank, and had an account

there, but Patterson was not; that Patterson & Wallace had no firm account with the bank. He also testified that the two drafts mentioned in the agreed statement submitted to the court, and hereinbefore referred to, were presented to him at the bank on the said 6th day of November, 1902, by Geo. E. Wallace. He said that Wallace asked him to send them off for collection, and when they were collected to credit the amount to his account. That he also asked witness to wire the American National Bank of Dallas, asking whether or not the drafts would be honored; that said Wallace instructed him, the witness, that when said drafts were collected to place the money to his, Wallace's, credit. That the drafts were not collected, but were returned protested, and after they were returned, Mr. Lackland, the cashier of the State National Bank of El Paso, indorsed them back to Patterson & Wallace for the reason that they were given to the bank for collection by that firm, and did not belong to the bank. He further testified that he supposed from Wallace having the papers in his possession that Patterson & Wallace were the owners; that the State National Bank of El Paso was never the owner of said drafts, nor the money to be derived therefrom, but had them only for collection, as an accommodation to Wallace, one of the depositors.

"Witness further testified that he knew nothing of the ownership of the drafts, except what was told him by Mr. Wallace when he presented them.

"J. C. Lackland, a witness, also testified that he was the cashier of the State National Bank of El Paso, Texas, on the 5th day of November, 1902; that he knew Patterson & Wallace, but did not know Ward Mannering. That he did not see the drafts in question until they were returned protested, as they had been presented to the receiving teller; but after they were returned protested, he indorsed them, without recourse, in behalf of the State National Bank, and turned them over to Mr. Geo. E. Wallace. This was a few days after the 6th day of November, 1902. That he did that at the request of Patterson & Wallace, who had placed the drafts in their hands for collection. That the State National Bank of El Paso was never the owner of the drafts, nor had any interest in the money.

"Geo. E. Wallace testified that he resided in El Paso, Texas, and was a member of the firm of Patterson & Wallace, composed of Chas. B. Patterson and himself. That during the month of October, 1902, the firm of Patterson & Wallace, of which he was a member, was employed by Ward Mannering, alias Mason, to defend him in the District Court of El Paso County for four felony charges. Ward Mannering was indebted to the firm for that service in the sum of $1000. That on the 6th day of November, 1902, Ward Mannering, alias Mason, gave the firm of Patterson & Wallace two drafts, one for $250 and the other for $25, drawn on the American National Bank of Dallas, payable to the State National Bank of El Paso, for convenience; that Patterson & Wallace were both present at the time these drafts were

made. That as soon as these drafts were delivered to them, he, Wallace, took them over to the State National Bank and gave them to the receiving teller, Mr. Turner, asking him to send them off for collection, and telling Mr. Turner, when collected, to notify the firm of Patterson & Wallace, or to place the money to his, Wallace's, credit, and he would then call and get it and pay Patterson his half of the amount. He further testified that the day before the drafts were drawn in part payment of the fees of Ward Mannering, they discussed with him, Mannering, the best way of getting the money. That at that time Ward Mannering agreed to make interveners a payment on the fee when due, and stated to them that he had money on deposit in the American National Bank of Dallas, Texas, but that he was unable to say exactly what the amount of such deposit was, but that it was about $283. That it was then agreed between Ward Mannering and interveners that he give them one draft for $250 and one for $25 to cover the amount which he had agreed to pay them at the time on their fee. That interveners told him that if he had less than $283 or less than $275 and more than $250, the bank would pay the $250 draft and return the $25 draft, and that the two drafts were drawn in the amounts stated for that reason. That interveners and Ward Mannering also agreed to make the drafts in the name of the bank, for the reason that they could collect them better than if drawn in the name of the firm, Patterson & Wallace. Witness Wallace wrote out the drafts, both he and his partner went down, and Mannering signed the two drafts and gave them to them, and they gave him a receipt for $275 on the fee then due. Witness took the drafts to the bank, and among other things asked Mr. Turner, the teller, to wire the American National Bank of Dallas, and he (witness) dictated the message. The telegrams referred to by the witness are incorporated in this statement of facts as a part of the written agreement read on the trial of the case.

"The witness stated that the payment of $275, made by Mannering to the firm of Patterson & Wallace, was on the indebtedness of $1000 for attorney's fees then owing by said Mannering."

The following are the conclusions of law of the court below upon the above facts:

"The drawing of said drafts was not in the ordinary course of business, but it was attended with such circumstances as to render it clear that it was the intention and agreement of the parties to the transaction that they were to be paid out of the particular fund now in controversy, and the drawing of said drafts and their delivery to interveners under such circumstances, constitute such an assignment to the interveners of so much of said fund as is specified in said drafts as entitled interveners to it, in preference to the plaintiff in garnishment in this suit, and as under the aforesaid written agreement mentioned in paragraph 1 of my findings of fact that is the only issue of law

which I am called upon to decide, judgment will accordingly be rendered in favor of the interveners."

Judgment was rendered by the court in accordance with the above conclusions in favor of the interveners against the garnishee and the appellant, for the sum of $250 and costs of suit.

There is no doubt that the holder of an unaccepted bank check can not maintain an action thereon against the bank. House v. Kountze, 17 Texas Civ. App., 402; Terry v. Dale, 27 Texas Civ. App., 1, 65 S. W. Rep., 396. And the simple drawing and delivering a check or draft does not assign the fund against which it is drawn. In this case, however, there was more than merely drawing and delivering a check. The drawer owed the party for whose benefit the checks were drawn the amounts for which they were drawn, and it was agreed by him and them that he would pay to them the aggregate amount of the two checks on his indebtedness to them. He had, prior to the execution and delivery of the checks, informed them that he had funds in the Dallas bank, and desired to pay them out of that fund, and the method of collecting or getting the money out of the bank was discussed, and it was agreed between interveners and the said Mannering that he should issue a check payable to the El Paso bank, so that that bank could collect the amount and pay same over to interveners. Immediately after the first check was issued interveners had the El Paso bank telegraph the Dallas bank to ascertain whether or not Mannering had funds in that bank, and that bank replied that he had deposited with it $283. Then the said Mannering issued the second check and delivered it to interveners, and they then gave to the said Mannering their receipt for the aggregate amount of the two checks.

The legitimate inference from the testimony in the record is that it was intended by the said Mannering to transfer or assign to interveners $275 of the fund he had deposited with the Dallas bank. Interveners gave him credit on their account against him for that amount, and he took from them their receipt for the same. And the checks were issued simply for the purpose of enabling interveners to collect said amount, and not in the ordinary course of business.

It fully appears from the record that the El Paso bank did not own or have any interest in these checks, or either of them, and that their connection with the same was simply for the purpose of collecting the amounts called for in them for the interveners. Clark v. Gillespie, 70 Texas, 516; Ralston v. Hope, 18 Texas, 452; Gamer v. Thomson, 35 Texas Civ. App., —, 9 Texas Ct. Rep., 595; Harris County v. Campbell, 68 Texas, 22; Milmo Nat. Bank v. Convery, 8 Texas Civ. App., 181; Fourth St. Bank v. Yardley, 165 U. S., 634; First Nat. Bank v. Clark, 134 N. Y., 368; Throop Grain Cleaner Co. v. Smith, 110 N. Y., 83; Risley v. Phoenix Bank, 83 N. Y., 318.

The court did not err in admitting in evidence the testimony of the intervener Wallace and the two bank officers complained of in appellant's fifth assignment of error. See authorities above cited.

The appellant in this case took no greater rights in the fund deposited in the Dallas bank, by its writ of garnishment and service thereof, than Mannering possessed at the time of such service. He having previously assigned the amount of $275 of said fund to the interveners, that amount then was the property of and owned by the interveners, and was not subject to the writ of garnishment.

We are of the opinion that the testimony as shown by the record sustains the judgment of the court below, and it is therefore affirmed.

*Affirmed.*

Writ of error refused June 23, 1904.