**WEST REALTY & INVESTMENT CO. et al. v. HITE et al. (No. 634–4495.)***

(Commission of Appeals of Texas. Section B. May 12, 1926.)

**1. Brokers ⟨⟩63(2)—Owners held liable to broker who found purchaser, where owners refused to close deal, even if employment contemplated payment only on consummation of sale.**

Where broker, who was employed to sell property, found a purchaser who was ready, able, and willing to buy on terms offered, but owners refused to close the deal, *held* owners were liable to broker, even if employment contemplated payment only on consummation of sale.

**2. Brokers ⟨⟩8(3), 86(4)—Evidence held to show that owners employed broker to sell property, and that broker procured purchaser.**

Evidence *held* to show that owners employed broker to sell real property on stipulated terms, and that broker procured a purchaser on such terms.

**3. Brokers ⟨⟩63(1)—That sale was not consummated by owner because terms of purchase presented opportunity to purchaser to pay after default, present value of balance unpaid, was no defense to breach of contract to pay broker.**

That prospective purchaser of real property on yearly payments could, under terms offered by owner, have satisfied foreclosure or prevented recovery of land after default by cash payment of present value of the balance unpaid, and failure to consummate sale was due to that possibility, this was no defense to breach of contract to pay broker for finding 'purchaser, as the owners were bound to know their proposed terms would have that effect.

**4. Assignments ⟨⟩48, 92—Transaction between broker and company, entitling latter to commissions, if it secured purchaser, constituted equitable assignment, and assignor cannot prejudice assignment by relinquishing commissions after company secures purchaser.**

Transaction between broker and company by which latter was to receive one-half of commissions, if it secured purchaser for land, was an equitable assignment of commissions, and not an attempt to assign contract of agent for personal services, and company's right to commission could not be prejudiced by the broker's relinquishment of commissions.

**5. Assignments ⟨⟩31.**

Whether debtor is justified in paying to assignee sum assigned is one test of an assignment.

**6. Assignments ⟨⟩34, 137.**

Equitable assignment of commissions to be earned by obtaining a purchaser for real property may be written or oral and may be proven by direct or circumstantial evidence.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by the West Realty & Investment Company, a corporation, against Rosalie D. Hite and another. The West Realty & Investment Company, a partnership, and others, intervened and became the plaintiffs. Judgment for defendants was affirmed by the Court of Civil Appeals (275 S. W. 1112), and plaintiffs bring error. Reversed and rendered.

Woods, King & John, of Houston, for plaintiffs in error.

Gill, Jones & Tyler and Wm. H. Wilson, all of Houston, for defendants in error.

SPEER, J. This suit was brought by West Realty & Investment Company, a corporation, against Rosalie D. Hite and another to recover commissions alleged to be due the realty company for services performed as a real estate agent upon an allegation that one Blake had been employed by the defendants as a real estate agent to sell the property in controversy, and that he in turn had made an equitable assignment of one-half the commission to be earned to the realty company in consideration of its making the sale or finding a purchaser. The petition alleged that the corporation had performed the services for which it was employed, and that Blake had refused to institute suit for its benefit. Pending the suit, the claim of the corporation was transferred to a partnership doing business under the same name, which intervened and became the plaintiffs. After issue was duly joined, the cause was tried before the court without a jury, resulting in a judgment in favor of the defendants. Upon appeal by the plaintiffs, that judgment was affirmed. 275 S. W. 1112. The writ of error brings before us the sole question whether or not under the facts proven judgment should have been for the plaintiffs.

In granting the writ of error herein, the Supreme Court indicated the point of its dissatisfaction as follows:

"We are not sure plaintiffs in error did not make a case when the broker found a purchaser at terms specified by seller."

[1] The principles of law applicable to the questions involved are not difficult of statement, but there is at times great difficulty in applying principles to the facts of a given case, and this is one of them. Generally, it will be conceded that, when a broker employed to sell property has found a purchaser who is ready, able, and willing to buy at the price and upon the terms specified in the broker's contract of employment, he has earned his commission, even though through some fault or inability of the owner the deal is never actually consummated. The rule extends even to those cases where the commission is to be payable only upon the consummation of the sale, if such consummation

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied June 23, 1926.

is prevented through the fault of the owner. The law will not permit the owner to deny to the broker his right to recover a commission where the broker himself has fully complied as far as possible, and where his only dereliction is produced entirely through the fault of the owner himself. So that in this case, conceding that Blake's employment contemplated that his commissions were to be paid upon a consummation of the sale, nevertheless the undisputed facts showing that the purchaser, Sterling, was ready, able, and willing to buy upon the terms offered, and that the deal failed only through the unwillingness of defendants in error to close, it must be held that the owner is liable for a payment of the commissions as though the deal had been actually consummated.

[2,3] A careful reading of the entire testimony has convinced us that in the last analysis it shows that defendants in error, through defendant in error Rosalie D. Hite, employed Blake, as broker, to sell the property in question for $45,000 cash, and 29 annual payments of $20,000 each, without interest, and that Blake, through the assistance of plaintiffs in error's assignor, procured a purchaser who was ready, able, and willing to purchase the property for that price and on those terms, and was at all times ready and willing to close the deal accordingly. The only reason the sale was not consummated appears from the uncontradicted evidence to be that, after reaching Houston, Miss Hite, from a consultation with her attorneys, concluded that the purchaser, under such a sale and terms, would have it within his power, by refusing to make the annual payments, as they fell due, to compel the owners to sue upon the contract when he would be able to defeat a recovery of the property by the payment of an immediate cash sum equal to the present value of the unmatured installments. This was not what the defendants in error wanted. They wanted to make sure of a fixed and certain income for the period of years without the possibility of a cash discount based upon the present worth of such a contract. For this reason, only, the sale was never consummated. If defendants in error employed Blake to sell the property upon the terms indicated, necessarily there was implied a credit to the purchaser to the extent of the $20,000 a year for 29 years. They knew, as everyone must be held to know, that the law became a part of that contract, and the respective legal rights and remedies of the parties thereto entered into the contract. If it is true, as they believed, that the purchaser could in any event satisfy a foreclosure or prevent a recovery of the land after default by a cash payment of the present value of his unmatured notes, then they contemplated this very situation in the contract, and would not be permitted to urge this as a grounds for breaching their agreement to pay a commission to their broker who had performed the full services of his employment merely because in legal contemplation they had changed their mind. But it is insisted by defendants in error, and both courts below have so found, that the broker, Blake, was not employed to sell the property or to find a purchaser upon a fixed price and given terms, but that the owners at all times reserved the right to approve or disapprove any offer that might be submitted, in which event, of course, they would not be liable for a commission, except upon the acceptance of a purchaser. The contract of agency was oral, and no one testified with respect thereto, except Blake. His authority proceeded from negotations with Miss Hite covering a period of time of about eight years. After the negotations with Sterling were begun, several letters and telegrams were exchanged between the parties. Some of these letters which had been received by Blake had been destroyed by him. He testified:

"Evidently there had been letters or telegrams from these ladies received by me before I wrote these two of the 7th and 10th of October, 1922, but I tore them up. I know where they are. I just read the letters and destroyed them. The letters were from Miss Hite, and were in regard to the terms of the sale of this property. You want me to state them just as I remember them? Well, of course, their proposition to me was $25,000 in cash, I mean Miss Hite. I never wrote to Mrs. Williams at all. Miss Hite's letter to me offered to take $25,000 in cash, and 30 payments of $20,000 annually. That was my understanding of how they would sell the property. Those annual payments of $20,000 each were to be without interest. Then a second letter from' her or a telegram stated that they wanted the first $20,000 payment in advance, making the cash payment $45,000 and 29 payments without interest. In other words, the total consideration for this property after this deal was started was supposed to be $625,000, payable $45,000 in cash and 29 payments of $20,000, without interest. That was the proposition. I think she said in those letters she would allow us 2½ per cent. commission in case of a sale. That was based—let's see, how did we get that?—anyway, she agreed to allow us 2½ per cent. commission. Then we added something like $500. Yes, 2½ per cent. on $250,-000. * * * Mr. West first told me that he had a party that would meet the proposition. I had told him about the proposition either verbally or in writing, I have forgotton which—probably both. Then I think the next day he told me it was R. S. Sterling, and we went to see Mr. Sterling together. That is my recollection. My statement is that Mr. West first informed me that he had a purchaser who would meet the terms and the following day put me in touch with Mr. Sterling."

It is true on cross-examination this witness testified:

"On that occasion Miss Hite said if I could sell the property for them they would be glad to pay me the commission, as much as they

would pay anybody else, or more, and gave me the terms which were different—that was some eight years ago, and the terms were different from what they were in the Sterling deal. I never had any authority to close anything at any time. In other words, they never did authorize me to make any particular deal. They merely stated, in effect, that, if I found somebody that would buy this property on terms satisfactory to them, and if they closed the deal, they would pay me a commission. They never, at any time, made any absolute proposition or terms of what they would sell this property at other than is shown by the correspondence. Miss Hite never told me that if I found somebody willing to buy this that she would pay me a commission regardless of whether she actually closed the deal or not. I never had any such agreement with her. My agreement with them was that, if the property was sold, I was to receive a commission. My understanding was that the sale of the property meant that if the deal should go through. That is the only way I would have accepted the commission."

But on redirect examination, in explanation of the foregoing, he said:

"I testified on direct, and, I believe, on cross, both, that the substance of this conversation with Miss Hite eight years ago was that, if I had sold the property for them, they would pay me a commission. Anything that I testified to on cross-examination about not being entitled to commission unless the sale actually went through is based on my understanding of the conversation. In that conversation it was not actually discussed whether or not if, after a trade was made, they backed out I would get a commission; that was not mentioned. In other words, the only words used between us that I can recall was that if I sold the property they would pay me the same commission that they would any real estate agent, or a better one."

It is thus apparent in giving his opinion that he was not to be entitled to a commission, unless a sale was actually consummated, the witness was merely testifying as to a legal conclusion with reference to the effect of the contract shown. Now the contract shown was to pay a commission, if a sale were made. Furthermore, it is apparent even this understanding was with reference to the agreements many years prior to the transaction out of which this suit grew. We think such testimony is of no probative force whatever, and in its last analysis the evidence shows that defendants in error, through Miss Hite, did authorize Blake to sell the property for the price and terms above indicated. He himself called and treated it as a proposition, submitting it to Sterling, who accepted it as such.

[4,5] It remains to consider whether or not plaintiffs in error may maintain this suit. They assert their right to do so as under an equitable assignment, whereas defendants in error contend that the relation of principal and agent involving personal service is such that an assignment of the contract will not be permitted. This is true in an important sense, but it has no application to the facts of this case. In the first place, there has been no effort in any way to assign the agency contract to the Wests in such sense as to substitute them for Blake, the agent of defendants' choice. There is nothing in the principle being discussed to prevent an assignment by a broker of his cause of action for services performed or to be performed. We thing the transaction here indisputably shows an intention between Blake and plaintiffs in error that the latter should be the owner of one-half of the commissions earned in this deal, and the law will treat it as an equitable assignment of the earned commissions to that extent. Hahl & Co. v. Hutcheson et al. (Tex. Civ. App.) 196 S. W. 262 (writ refused).

It is more than an agreement by Blake to pay out of the commissions when received. This would not constitute an equitable assignment at all. It would be merely a personal promise to pay at last. 5 Cor. Jur. p. 913, § 80. Rather it is an agreement that the parties were to be joint owners of the commission when earned through a sale to a purchaser of plaintiffs in error's procurement. The agreement in the light of the subject-matter and all the circumstances evidenced a present passing from Blake of all control over, or interest in, the fund to the extent of one-half, whenever it actually came into existence. Under that agreement the owners, without further action by Blake, would have been justified in paying to this extent directly to plaintiffs in error, and this is one of the tests of an assignment. See 5 Cor. Jur. p. 914, note 35 (b).

[6] Such an assignment is not required to be in writing. It may as well be oral, and may be proven by any legitimate evidence, direct or circumstantial, showing such intention between the parties. Word v. Elwood, 90 Tex. 130, 37 S. W. 414; Slaughter v. Bank (Tex. Civ. App.) 164 S. W. 27; N. Y. Life, etc., Co. v. Patterson, 35 Tex. Civ. App. 447, 80 S. W. 1058 (writ refused); Throop, etc., Co. v. Smith, 110 N. Y. 83, 17 N. E. 671. And, moreover, the assignment may relate to a subject-matter of potential existence, to an expectancy, or the like, precisely as to a fund in esse. Pom. Eq. Jur. (4th Ed.) § 1283 et seq.

Defendants in error have not been deprived of the services of their agent, Blake, through any attempted substitution by assignment of the agency contract, but they have had those services at all times. Blake, out of consideration for his long friendship for defendants in error, or without any reason whatever, if he chooses, may relinquish to them any rights whatever he may have to a commission, but it is not within his power to prejudice the rights of plaintiffs in error to a recovery to the extent of their contract

with him. We are of the opinion that to give full effect to all the evidence of any probative force whatever shows conclusively that plaintiffs in error are entitled to recover, and we accordingly recommend that the judgments of the trial court and the Court of Civil Appeals both be reversed, and judgment be here rendered in favor of plaintiffs in error for the amount claimed.

CURETON, C. J. Judgments of the District Court and Court of Civil Appeals reversed, and judgments rendered for plaintiffs in error.