**SOUTHWEST CONTRACT PURCHASE CORPORATION v. McGEE.
(No. 310.)**

Court of Civil Appeals of Texas. Eastland. June 3, 1927.

Rehearing Denied July 1, 1927.

**1. Bills and notes ☜164—Where one payment was conditioned on installation of machinery, and instrument gave maker option to pay or return equipment, instrument was not negotiable (Rev. St. 1925, art. 5932).**

Under Rev. St. 1925, art. 5932, requiring that instrument to be negotiable must contain an unconditional promise or order to pay certain sum in money, instrument in which at least one of payments was conditioned on completion of installation of machinery, and which gave maker option either to make monthly payments or return equipment, was not negotiable.

**2. Bills and notes ☜164—Instrument in which payment was conditioned on installation of machinery held not negotiable, because of uncertainty of installation of machinery (Rev. St. art. 5932, § 4).**

Where payment of instrument was conditioned on completion of installation of machinery, it was not negotiable, under Rev. St. 1925, art. 5932, § 4, because there was no certainty at time instrument was executed that machine would ever be installed, and subsequent happening of event did not cure defect.

**3. Bills and notes ☜165—Where promise to pay was part of instrument containing independent provisions requiring doing of things by both maker and payee, instrument was not negotiable.**

Where promise to pay was not complete instrument within itself, but was part of an instrument containing many independent provisions requiring doing of things by both maker and payee, instrument was not negotiable.

**4. Courts ☜91(1)—Court of Civil Appeals is bound by last expression of Supreme Court.**

Court of Civil Appeals is bound by opinion which is last expression by Supreme Court on question.

**5. Bills and notes ☜315—Defense of failure of consideration held available to maker against holder of nonnegotiable instrument for value before maturity and without notice.**

In suit by assignee, who was bona fide holder for value before maturity and without notice of installment note which was nonnegotiable instrument, maker could defend on ground of partial failure of consideration.

**6. Sales ☜279—Instrument, guaranteeing refrigerator sold to produce certain temperature, guaranteed that refrigerator would produce temperature named in equipment to which it was applied.**

Under contract for sale of refrigerating machine, guaranteeing machine to produce certain temperature, guaranty was that machine would produce temperature named in particular equipment to which it was applied.

**7. Sales ☜288(6)—Buyer to whom machine had been delivered when he executed instrument containing promise to pay was not estopped from relying on guaranty.**

That at time buyer executed instrument promising to pay for refrigerating machine sold him, machine had actually been delivered to buyer, and he knew that purpose in having him execute instrument was to enable seller to procure money thereon, did not estop buyer from relying upon guaranty contained in instrument.

On Rehearing.

**8. Bills and notes ☜315—Assignee was not protected as innocent holder of instrument, where, by assignment, assignee acquired only assignor's interest, and instrument on face showed something remained to be done and carried guaranty.**

Assignee of installment note was not protected, as innocent holder of instrument, where, by wording of assignment, assignee acquired only such interest as assignor had in instrument, and where instrument showed on its face that something remained to be done, and carried on its face guaranty of quality of machinery sold.

Appeal from District Court, Dallas County; Claude M. McCallum, Judge.

Suit by the Southwest Contract Purchase Corporation against C. R. McGee. From the judgment, plaintiff appeals. Affirmed.

Crane & Crane, of Dallas, for appellant.

Lively & Daugherty and J. Hardy Neel, all of Dallas, for appellee.

HICKMAN, J. The appellant, as assignee of Ridgeway & Bruton, instituted this suit against appellee to recover a balance alleged to be due on a written instrument described by appellant as an installment note executed by appellee in part payment of a refrigerating machine sold to appellee by Ridgeway & Bruton, and to foreclose a chattel mortgage on the machine given to secure the payment thereof. Appellee pleaded under oath certain offsets and counterclaims based upon the allegation that the machinery would not produce a temperature of from 35 to 38 degrees Fahrenheit as it was guaranteed to do by Ridgeway & Bruton; in short, we have construed the pleading of appellee to be in effect a partial failure of consideration. The jury returned a verdict in favor of the plaintiff in the sum of $1,344.95 and likewise a verdict in favor of the defendant in the sum of $1,378.16. The judgment, after reciting such verdict, decrees in effect that, it being manifest that defendant's offsets exceed the amount found in plaintiff's favor and that defendant is not entitled to a personal judgment against plaintiff for the excess, it is therefore ordered, adjudged, and decreed that neither party recover anything as against the other. Costs were adjudged against appellant. From this judgment an appeal has been perfected.

A description of the written instrument

upon which this suit is based is necessary to an understanding of the questions discussed. The instrument is one sheet of paper so folded as to make four pages. The first two pages comprise what is designated as the proposal. It is dated at Dallas, Tex., August 24, 1922, addressed to C. R. McGee, and is signed by C. R. McGee as purchaser and accepted by Ridgeway & Bruton. The proposal was to furnish and install, subject to the conditions outlined therein, one model No. 1400 Lipman automatic refrigerating machine to be applied to one box 5x8x10 feet and one display counter 10 feet long located in the building of the purchaser. The machine was to be installed in the market of the purchaser in the rear of a building described in the contract. The purchaser was to place available within 5 feet of the machine certain water and electric lines sufficient in capacity properly to operate the machine. The sellers guaranteed the machine to produce temperature of 35 to 38 degrees Fahrenheit, and to replace defective material when "proven the cause of original manufacture." The sellers agreed to install the machine 40 days from date of formal acceptance, the work of installation to begin as soon after the acceptance as practicable, contingent upon strikes, fires, and other causes beyond the control of the sellers. Title to the machinery and all materials furnished remained in the seller until paid for in cash. The purchaser agreed to take all risks of loss by fire or other casualty and to keep the machine insured "for whose interest may appear." The satisfactory operation of the equipment was made contingent upon the purchaser's furnishing plentiful supply of water and electricity at all times. The prices and terms were "as per conditional sale contract hereto attached." Immediately following this so-called proposal, and beginning on page 3, without any separate heading, was the following obligation:

"I acknowledge delivery to me of the above-described equipment including model 1400 Lipman refrigerating machine, serial No. ——, for which I agree to pay you, your successors, or assigns the sum of twenty-nine hundred and twenty-two and no/100 ($2,922.00) as follows: Four hundred dollars ($400.00) cash in hand and two hundred thirty and no/100 dollars ($230.00) upon completion of installation and one hundred ninety-one and no/100 dollars ($191.00) on the 15th day of each consecutive month thereafter. The final monthly payment to be the amount of the balance then due. It is agreed that the title and ownership of said equipment is to remain in you, your successors, or assigns until all of said indebtedness is fully paid in cash and that thereupon the title and ownership is to pass to me.

"Should I fail to make any of the monthly payments as above specified, the entire balance will then become due and payable, and I agree to make such payment or return said equipment to you or your successors or assigns on demand and without legal process.

296 S.W.—58

"I further agree to take good care of said equipment and be responsible for its loss by theft, fire, or other casualty and not to remove it from 1924 Greenville avenue, Dallas, Texas, until I first obtain consent in writing.

"It is further understood and agreed that no other agreement oral or written, express or implied, shall limit or qualify the terms of this contract.     [Signed]     Ridgeway & Bruton.
"Salesman, L. B. Lyon.
"Accepted: C. R. McGee.
"Witness:
"H. S. McClanahan,
"W. E. Tomlinson."

This instrument was assigned by Ridgeway & Bruton for a valuable consideration to appellant on or about September 15, 1922.

[1] Appellant contends that the instrument above described is a negotiable instrument, and since the undisputed evidence shows that appellant acquired it in the regular course of business, before its maturity, in good faith, for value, without notice of any infirmity in the instrument, or of any defense thereto, it held it free of the defenses interposed by appellee. Let us examine the instrument and determine whether or not it is negotiable under the provisions of article 5932 of the Revised Statutes of 1925. Under this article an instrument to be negotiable must conform to certain requirements. One of these requirements is that it must contain an unconditional promise or order to pay a sum certain in money. This instrument does not fulfill that requirement. At least one of the payments was conditioned upon the completion of the installation of the machinery. The instrument further gave the maker the option either to make the monthly payments or return the equipment. These provisions of the instrument clearly make the promise to pay conditioned upon the installation of this machinery, and, even then, optional with the maker, and the instrument is therefore not negotiable. 8 C. J. pp. 117, 120, §§ 211, 212; Brannan's Negotiable Instrument Law (4th Ed.) p. 12, § (c); 1 Daniel on Negotiable Instruments (6th Ed.) § 41; Chicago Trust & Savings Bank v. Chicago Title & Trust Co., 190 Ill. 404, 60 N. E. 586, 83 Am. St. Rep. 138.

[2] Another requisite of a negotiable instrument is that it must be payable on demand or at a fixed or determinable future time. The same article provides in section 4 thereof that it may be payable at a fixed period after the occurrence of a specified event which is certain to happen, though the time of the happening be uncertain. This instrument does not come within this requisite of the statute. There was no certainty at the time the instrument was executed that the machine would ever be installed, and, although the event may have subsequently happened, the happening thereof did not cure the defect. Article 5932, R. S. § 4; 8 C. J. pp. 134 to 138, §§ 235, 236.

[3] There is another reason why, in our opinion, this instrument cannot be said to be negotiable. It will be noted that the promise to pay is not a complete instrument within itself, but is a part of an instrument containing many independent provisions, requiring the doing of certain things by both the maker and the payee. The instrument describes that portion thereof wherein is contained the obligation to pay as a conditional sale contract, which is expressly referred to as being attached to the proposal. Negotiable paper is designed in a measure to take the place of money in commercial transactions. As such it must circulate freely. The law merchant was never intended to apply to a promise to pay hidden in an instrument containing many collateral provisions and obligations on the part of either the maker or the payee. Lane Co. v. Crum et al. (Tex. Com. App.) 291 S. W. 1084; 8 C. J. pp. 125, 126, § 220.

Appellant contends that it is protected as an innocent holder for value, without notice, before maturity, as against the defense of want or failure or partial failure of consideration, even though the instrument is nonnegotiable. By this contention appellant has raised a question which is very interesting, and whch requires careful consideration. Article 574 of the Revised Statutes 1925 reads as follows:

"The defendant in any suit upon a written instrument may plead want or failure, or partial failure of consideration, where such written instrument shall remain in the possession of the original payee or obligee or when it has been transferred or assigned after the maturity thereof, or when the defendant proves a knowledge of such want or failure of consideration on the part of the holder prior to such transfer."

In construing the meaning of this article, our Supreme Court, speaking through Chief Justice Gaines, in the case of McCormick v. Kampmann, 102 Tex. 215, 115 S. W. 24, uses this language:

"We think this language is too plain to admit of discussion. It is evident that when the revisors compiled the statutes of 1879, which were afterwards adopted by the Legislature, their purpose was to put negotiable and nonnegotiable paper upon the same footing in respect to defenses to them and protect the bona fide holder without notice of such paper against the defense of failure of consideration, whether the paper was negotiable or not."

If we understand this case, it holds that the defense of failure of consideration is not available against a bona fide holder without notice of nonnegotiable paper. This very important decision seems to have been lost, as we know of no later case following it in this particular. The opinion states that the court had been unable to find any decision of that court directly in point. It appears that the construction of this statute had formed the subject of two conflicting opinions by the Courts of Civil Appeals prior to this time, one of which cases did reach the Supreme Court. In the case of J. W. Barton & Co. v. Exchange Bank, 2 Willson Civ. Cas. Ct. App. § 711, it was construed in accordance with the views of the Supreme Court above quoted. Judge Willson who wrote this opinion concludes that article 272 (now article 574) controlled article 267 (now article 570).

Article 570 reads as follows:

"The assignee of any instrument mentioned in the preceding article may sue thereon in his own name. He shall allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant."

In the case of Ablowich v. Greenville National Bank, 22 Tex. Civ. App. 272, 54 S. W. 794, the Court of Civil Appeals, at Fort Worth, speaking through Chief Justice Conner, construed the two articles which are now 570 and 574, and arrived at a conclusion directly in conflict with that of Judge Willson above referred to, holding that article 574 was general and article 570 special, and that, therefore, the latter would control. His conclusion in that case was that the defense of a partial failure of consideration was available to the maker of a nonnegotiable instrument in the hands of a bona fide purchaser, for value, without notice, before maturity, provided the instrument was subject to that defense before notice of the assignment was given to the defendant. That case reached the Supreme Court, and will be found reported under the same style in 95 Tex. 429, 67 S. W. 79, and 95 Tex. 429, 67 S. W. 881. We do not know what assignments were presented to the Supreme Court, but the opinion by Justice Brown states:

"We have examined all the assignments presented in the application, and find no error except the foreclosing of the mortgage lien."

[4, 5] In a recent opinion by Judge Harvey of the Commission of Appeals in the case of Lane Co. v. Crum et al., 291 S. W. 1084, it is held that a maker can both defend against and have canceled a nonnegotiable instrument in the hands of a bona fide holder, for value, before maturity, and without notice, on the ground of failure of consideration. This opinion does not refer either to article 574 or to the opinion of Justice Gaines construing same. Whether the opinion is placed upon the ground that the Negotiable Instruments Act had the effect of repealing article 574 we do not know. This opinion is the last expression by the Supreme Court upon this question, so far as we are advised, and we are bound by it. On the authority of the decision in that case, we hold that the defense of failure of consideration was available to the appellee in this case, and that appellant

is not protected as an innocent holder of the instrument sued upon.

[6] Appellant contends that it should have recovered in this case, because the evidence shows that the failure of the machine to produce a temperature of 35 to 38 degrees Fahrenheit as guaranteed under the contract was due, not to any defect in the machine or to any lack of capacity to produce such temperature, but to the defective construction of the equipment in appellee's place of business to which the refrigeration was applied. The evidence indicates that, if the ice box and display counter had been constructed differently, it would have been possible to have produced the temperature guaranteed by the use of this particular machine. We cannot sustain appellant's contention in this regard. The contract was not to produce the temperature named in any particularly described equipment, but was to maintain that temperature in the equipment located in the building of the purchaser. We think a proper construction of the guaranty in connection with the entire instrument is that this machine would produce the temperature named in the particular equipment to which it was applied. This assignment will therefore be overruled.

[7] Appellant claims estoppel against appellee, based upon the fact that, at the time appellee executed the instrument sued on, the machine had been actually delivered to appellee, and he knew that the purpose in having him execute this instrument upon the receipt of the machine was to enable Ridgeway & Bruton to procure money thereon. We cannot sustain this assignment. The instrument upon its face carried notice of the facts and circumstances and environment surrounding its execution, and the mere acknowledgment of receipt of the machine and a conditional promise to pay therefor could not estop appellee from relying upon the very terms of the instrument which he signed.

We have carefully examined all of appellant's assignments, and, being unable to sustain any of them, the judgment of the trial court will be affirmed.

### On Rehearing.

Appellant calls our attention to an inaccuracy in our original opinion. The case of Ablowich v. Bank which reached the Supreme Court, and from the opinion in which we quoted, seems to have come through the Dallas Court of Appeals instead of the Fort Worth court. There must have been another trial of the case decided in the opinion by Chief Justice Conner and mentioned by us in our original opinion. We have been unable to locate the opinion of the Dallas court in the case, and counsel for appellant have likewise been unable to locate same; but it appears that one must have been rendered. This matter is immaterial, because our opinion was in no sense based upon what the Supreme Court stated in that case; but, as stated in the opinion, upon our interpretation of the holding in the case of Lane Co. v. Crum (Tex. Com. App.) 291 S. W. 1084. However, we are glad to correct the inaccurate statement.

Our attention is called to the opinion by Justice Greenwood of the Supreme Court in the case of J. I. Case Threshing Machine Co. v. Howth, 293 S. W. 800, and the argument is made that, since the Supreme Court regards article 574 as being still in force, it cannot be assumed that that court intended to overrule, in the case of Lane Co. v. Crum, supra, the opinion of Chief Justice Gaines in the case of McCormick v. Kampmann, 102 Tex. 215, 115 S. W. 24. Upon what theory the Supreme Court held that the holder in due course of the instruments described in the case of Lane Co. v. Crum was not protected it is not our province to speculate. It may be that the defense there was not a want or failure or partial failure of consideration, although a careful reading of the opinion in that case leads us to believe that such was the defense. Regardless of whether or not it could be technically so denominated, we think that case is so similar to the case under consideration as that it is controlling upon us. We therefore based our decision upon the authority of that case.

[8] We are of the opinion that the appellant is not protected as an innocent holder of the instrument described in the original opinion under the decision of McCormick v. Kampmann, supra, for several reasons. By the wording of its assignment appellant acquired only such interest as Ridgeway & Bruton had in the instrument, and further, the instrument showed on its face that something remained to be done and carried on its face a guaranty of quality. By its provisions it was subject to defenses and offsets in the event the machinery described therein failed to meet certain requirements. The opinion of Justice Gaines, as we construe it, cannot be given the effect of depriving the maker of an instrument of the defenses and offsets disclosed by its very terms. We did not base our opinion upon these grounds, because we conceived it to be our duty to follow the latest expression of the Supreme Court on the subject; and, construing the decision in the case of Lane Company v. Crum to be an authority for affirming the judgment of the trial court, we based it upon that ground alone. But since appellant insists that our decision is in conflict with the decision of Chief Justice Gaines in the Kaupmann Case, we have indicated our views more fully.

The motion for rehearing will be overruled.