D. S. ELLIOTT v. FIRST NATIONAL BANK OF FT. STOCKTON.

No. 2268.   Decided January 22, 1913.

**1.—Check—Acceptance.**

If a check has been accepted by the bank on which it was drawn, so as to render the bank primarily liable, judgment can not be rendered against the drawer without taking judgment against the acceptor. (Rev. Stats., art. 1203.) (P. 549.)

**2.—Same.**

A written communication by a bank, in answer to inquiry, that it holds a deposit to pay a check of a particular description to be drawn upon it, is equivalent to a statement that such check is good and will be honored, and amounts to an acceptance when addressed to a person who is thereby induced to cash the check. If not technically so, it is practically a letter of credit against a check of such description and can be enforced by one who takes the check on the faith of it.   (P. 550.)

**3.—Same—Special Deposit—Case Stated.**

A bank, in answer to a telegram from another bank as to whether it would pay the check of E. for a named amount, answered that there had been deposited with it such sum to pay check drawn by E. in favor of K.   The bank inquiring thereupon cashed the check of E. in favor of K. on the bank so answering.   Held that the answer, though not in the terms of the inquiry (that it would pay any check drawn by E. for that amount) must have intended the bank addressed to understand that it would honor the check of E. in favor of K. to that amount, the special nature of the deposit rendering only such form of check good.   For such check the answer was a substantial acceptance rendering the bank liable primarily, and E. only secondarily; and it was error to render judgment against the latter in the absence of judgment against the bank.   (Pp. 548-550.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Pecos County.

The bank sued Elliott and Kilpatrick and obtained judgment. Defendant Elliott appealed, and obtained a writ of error on judgment reformed and rendered by the appellate court.

*Chas. T. Haltom, Howell Johnson,* and *W. C. Jackson,* for plaintiff in error.—The court erred in rendering judgment of any kind against

this defendant, in this case, before judgment had been rendered against the City National Bank of Corpus Christi, Texas, which was shown to be principally liable to plaintiff on check sued on, said bank not being a party to this suit.  Rev. Stat., 1895, Arts. 1203, 1204; 7 Cyc., 650; Milmo Natl. Bk. v. Cobbs, 53 Texas Civ. App., 1; Hall v. Couk, 17 S. W., 1022; Roberts v. Austin, 5 Whart., Pa., 313.

*O. W. Williams,* for defendant in error.—There is no evidence showing an acceptance of the check by the bank.  Rev. Stats., 1895, Arts. 306, 315; Vaughan v. F. & M. Bank, 126 S. W., 691; Lumber Co. v. Bank, 91 Texas, 100.

Mr. Justice Phillips delivered the opinion of the court.

This was a suit by the First State Bank of Fort Stockton against D. S. Elliott, as the drawer, and O. H. Kilpatrick, as the indorser, of a check drawn by Elliott in Kilpatrick's favor on July 11, 1908, for the sum of $1,790.00 on the City National Bank of Corpus Christi, which on the same day was cashed by the plaintiff for Kilpatrick, the payment of which was refused by the City National Bank of Corpus Christi on presentation.  The check was given by Elliott to Kilpatrick in completion of a land purchase.  Prior to its date Elliott's father had deposited to Elliott's credit in the City National Bank of Corpus Christi the sum of $1,890.00 for his use in paying Kilpatrick for the land and to enable him to make the purchase, under such circumstances as to make it a special deposit for that purpose as found by both the trial court and the Honorable Court of Civil Appeals.

In closing the land transaction at Fort Stockton Elliott first gave Kilpatrick a check for $1,890.00, which Kilpatrick requested the plaintiff to cash.  Its cashier declined to cash the check unless in some way assured that it was good, but offered to take it for collection.  A discussion of the matter resulted in the plaintiff sending the Corpus Christi bank the following telegram:

Fort Stockton, Texas, July 10, 1908.

"City National Bank, Corpus Christi, Texas.

"Will you pay check D. S. Elliott $1,890.00?  Rush answer.

"(Signed)   First State Bank."

It received the following telegram in reply:

"Corpus Christi, Tex., 7/11/08.

"First State Bank, Ft. Stockton, Texas.

"D. T. Elliott has deposited with us $1,790.00 to pay check drawn by D. S. Elliott favor of O. H. Kilpatrick.

"(Signed)   City National Bank."

Thereupon it appears that D. S. Elliott gave to Kilpatrick two checks upon the Corpus Christi bank, one for $100.00, which was paid on presentation and is not in issue, the other being the check in suit, for $1,790.00, which, as stated, was cashed for Kilpatrick by the plaintiff.  Payment of the check was refused by the bank because of its

having been served with a garnishment writ, on July 11, 1908, in a suit instituted in Nueces County wherein Dan A. Leary and Al Chastain were plaintiffs and Kilpatrick, W. W. Sands, and P. H. Chilton were defendants. The check was subsequently protested.

The trial court found that the indorsement and delivery by Kilpatrick of the check to the plaintiff amounted to an equitable assignment to the plaintiff of $1,790.00 on deposit to Elliott's credit in the bank, but that Elliott and Kilpatrick remained liable to the plaintiff on the check as drawer and indorser respectively, and that the check, in the event of its non-payment, carried with it an equitable lien on the land conveyed by Kilpatrick to Elliott, in part payment for which it was given. It rendered judgment against both Elliott and Kilpatrick for the amount of the check with interest and for the protest fees, decreed in plaintiff's favor the foreclosure of such lien, and provided that Kilpatrick should have judgment over against Elliott for any amount of the judgment he might be required to pay and that in such event he should be subrogated in the amount of such payment to the lien. Elliott alone appealed.

The Court of Civil Appeals approved the conclusions of law of the trial court except in respect to the lien upon the land and Kilpatrick being entitled to any judgment against Elliott. It accordingly reformed the judgment and rendered it for the plaintiff against Elliott and Kilpatrick for the same amount as decreed by the trial court, without any lien upon the land, with a judgment in Elliott's favor against Kilpatrick for whatever amount of the plaintiff's judgment he might be required to pay.

It is provided by Article 1203, Revised Statutes of 1895, as follows:

"The acceptor of any bill of exchange, or any other principal obligor in any contract, may be sued either alone or jointly with any other party who may be liable thereon; but no judgment shall be rendered against such other party not primarily liable on such bill or other contract, unless judgment shall have been previously, or shall be at the same time, rendered against such acceptor or other principal obligor, except where the plaintiff may discontinue his suit against such principal obligor as hereinafter provided."

If the telegram of the City National Bank of Corpus Christi to the plaintiff was equivalent to an acceptance of the check so as to make it primarily liable for the amount, under the statute the judgment against Elliott was erroneously rendered, as it does not appear that any judgment upon the check had ever been rendered against the bank and the pleading of the plaintiff failed to allege any of the reasons that would excuse suit against the bank under the provisions of Article 1204.

The rule as to what is necessary to constitute an acceptance by the drawee of a bill of exchange or a check, is thus declared in 1 Daniel on Negotiable Instruments, Section 504a: "In the absence of statutory provision, any words used by the drawee to the drawer or holder, which by reasonable intendment signify that he honors the bill, will amount to such acceptance; though it would be different if the words were addressed to a stranger having no interest in the bill."

In Bigelow on Estoppel, 522, the rule is thus stated: "Any lan-

guage, it has indeed been said, whether verbal or written, employed by an officer of a banking institution whose duty it is to know the financial standing and credit of its customers, representing that a check drawn upon it is good and will be paid, estops the bank thereafter as against a bona fide holder of the check from denying the want of funds to pay the same.''

As the writing of the word "good" by a bank officer, accompanied by his signature, across the face of the instrument ordinarily operates even as a certification of a check (2 Daniel Neg. Inst., sec. 1606; 1 Morse Banks & Banking, sec. 406), we think it must be held that a bank's written communication, upon inquiry, that it holds a deposit to pay a check of a particular description to be drawn upon it, is equivalent to a statement that a check of such description is good and will be honored, and amounts to an acceptance where the person to whom the communication is addressed is thereby induced to discount the check. If it be not regarded as a technical acceptance, such a communication, at all events, amounts practically to a letter of credit against a check of such description, and one, who, for value, takes the check upon the faith of it, is entitled to enforce the liability that it imports as a promise to pay the check. Whilden v. Merchants & P. Natl. Bank, 64 Ala., 1; 38 Am. Rep., 1.

The deposit here was made with the bank, not as a general deposit, but as a special one for the purpose only of paying Elliott's check to Kilpatrick in this specific transaction. Because, doubtless, of its recognition that such was its character and purpose, the bank, in replying to the telegram of the plaintiff, refrained from making answer in the terms of that telegram, and therefore declined to say that it would pay any check drawn by Elliott for such amount. But in saying, as it did in its reply, that it held on deposit $1,790.00 "to pay check drawn by D. S. Elliott favor of O. H. Kilpatrick," it must have intended for the plaintiff to understand that it would honor such a check.

The check was good in fact because of the special nature of the deposit. But it was in fact good only because the bank held the money specially dedicated to its payment. The bank's statement, therefore, that it held the deposit that made it good was clearly equal to a representation that it was good, and it must have known that its reply was subject only to the interpretation that the check would be honored on presentation.

Because the City National Bank of Corpus Christi became primarily liable for the payment of the check, and Elliott was liable only secondarily, and no judgment had been rendered against the bank, the judgments of the Court of Civil Appeals and the District Court should be reversed and the cause remanded. Mullaly v. Ivory, 30 S. W., 259. It is so ordered.

*Reversed and remanded.*