CONN et al. v. SAN ANTONIO NAT. BANK et al. (No. 410-3766.) *

(Commission of Appeals of Texas, Section A. April 4, 1923.)

Banks and banking ⬤==134(1), 140(3)—Reply that draft "is good to-day" held power to pay draft if funds were on hand on presentation; bank had no right to refuse payment of accepted draft and use drawee's funds to pay its own debt.

Where a bank, receiving a telegram, "Will you pay" draft of $5,000 drawn by a named party, replied, draft "is good to-day," such reply was an acceptance based only on condition that the funds were on hand at the time the draft was presented; and, where the draft was thereafter promptly presented for payment when funds were on hand to pay it, the bank had no right to refuse payment and appropriate the drawee's funds in the bank to the bank's debt.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by R. C. Conn and another against the San Antonio National Bank and others. Judgment for plaintiffs against the named defendant was by the Court of Civil Appeals reversed and rendered (237 S. W. 353), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and judgment of district court affirmed.

Warren & Conn, of Houston, for plaintiffs in error.

Denman, Franklin & McGown, of San Antonio, for defendants in error.

RANDOLPH, J. This suit was originally filed in the district court of Jasper county by R. C. Conn, as plaintiff, against the San Antonio National Bank and others, but was transferred by the trial court on a plea of privilege by the bank to the district court of Bexar county, Tex. Conn having died, his widow, Mrs. S. N. Conn, intervened and was substituted plaintiff in the cause; she being the sole devisee and independent executor under Conn's will. The trial court rendered judgment in the case against the bank in her favor for the sum of $6,510.88, and it is only this part of the judgment that is involved in this hearing. From said judgment the bank appealed to the Court of Civil Appeals in San Antonio, and that court reversed the judgment of the trial court and rendered judgment for the bank. 237 S. W. 353.

The Ward Cattle & Pasture Company, a corporation, with R. E. Ward as its president, was engaged in the business of raising, buying, and selling cattle, and had been for many years doing business with the San Antonio National Bank. During the years in which said company transacted business with the said bank, it had a good many transactions involving loans by the bank to it and in which transactions the company gave mortgages upon its land and cattle to secure such loans. During all of those years the officers of the cattle company had invariably ignored the bank's mortgage rights and had sold and disposed of the cattle covered by the bank's mortgages at will. Whether this was done with the consent of the bank's officers is disputed, but there can be no question but what such conduct was known to them. It was also customary with the cattle company when they sold cattle covered by that bank's mortgages to use such money so realized in the purchase of other cattle.

In 1915 the plaintiff R. C. Conn sold to the cattle company certain cattle on credit, taking a note with mortgage security upon the cattle he sold.

When the note became due it was extended, and Conn at this time took as additional security a note signed by R. G. and B. M. Hatchell. When the note again became due, R. E. Ward, president of the cattle company, who was then in attendance on court at Fort Worth in a case in which his company was being sued for a large amount of money, had his bookkeeper to estimate the amount on deposit to the company's credit in the San Antonio Bank and had drafts drawn and mailed on April 26, 1916—one to a party named Gilbert and another to R. C. Conn for $5,000, which two drafts approximately covered the amount of the funds then in that bank. The draft for $5,000 was received by R. C. Conn on April 27, 1916, and was by him on the 28th of April, 1916, placed in the Kirbyville State Bank for collection, and he had that bank send the following telegram to the San Antonio Bank:

"We have for collection on you Ward Cattle and Pasture Company draft for five thousand dollars in favor of R. C. Conn. Will you pay same? [Signed] Kirbyville State Bank."

In answer to said telegram the San Antonio Bank wired as follows:

"San Antonio, Texas, April 29.

"Kirbyville State Bank, Kirbyville, Texas: Check of Ward Cattle and Pasture Company for five thousand dollars is good to-day. "[Signed] San Antonio National Bank."

Before the receipt of this telegraph answer, the check, or draft, was mailed by the Kirbyville Bank to a bank in Houston for collection, and that bank in turn mailed it either to the San Antonio National Bank or to some bank in San Antonio for presentation to the San Antonio National Bank. At all events, the check was mailed out from Kirbyville on the 28th of April, 1916, and was received by, or presented to, the San Antonio National Bank on Monday following the Friday, April 28th, that it left Kirbyville, and was by the San Antonio National Bank refused payment.

On the date of the receipt of the draft by the San Antonio National Bank there was

on deposit in that bank to the credit of and subject to the order of the Ward Cattle & Pasture Company the sum of $8,060 unappropriated.

The check or draft was mailed by the Kirbyville Bank on April 28, 1916 (as stated above), prior to the sending of the telegram by last-named bank, and, on receipt of the telegram from the San Antonio Bank, R. C. Conn mailed the chattel mortgage and note and release to the proper persons, and also returned the collateral security note to R. Q. Ward, the alleged owner.

It must be understood that at the time of the sending of the telegram by the San Antonio Bank and at the time of the presentation of the draft payable to Conn to it, the Ward Cattle & Pasture Company was heavily indebted to the San Antonio Bank—in a sum very much larger than the amount of the deposit. The draft was turned down on Monday, May 1, 1916. No further steps were taken in the matter by the San Antonio Bank until May 13, 1916, on which date the amount of the deposit standing in the name of Ward Cattle & Pasture Company was appropriated by the bank and entered as a credit upon a note owed by said company to the bank.

It is true that the note upon which the credit was indorsed was held in the name of Col. Breckenridge, former president of the San Antonio National Bank, as trustee; but this holding by him in no wise changed the beneficial ownership of said note out of the bank, and the bank had the right to appropriate such deposit upon the debt due them if they had not deprived themselves of that right by their failure to make such appropriation prior to or on the date of the presentation of the draft for payment and contemporaneously with such presentation, and had not been precluded from doing so under our view of the law discussed below.

On the 28th of April, 1916, the Ward Cattle & Pasture Company went into the hands of a receiver; but as the claim of Conn was not presented to the receiver and there was no adjudication of the matters involved in the draft controversy, such receivership in no wise affects the status of this case. It is true that the receiver came into possession of two head of cattle that were included in the Conn mortgage and sold same and entered a credit of $70 in favor of Conn; but the evidence clearly indicates that Conn never participated in the receivership, and the San Antonio Bank makes no claim that any part of this deposit was payable to the receiver of such company.

Under the facts stated, we think that the San Antonio National Bank is liable upon the draft given to Conn and had no right to appropriate the funds in the bank to the payment of its debt in part or in whole.

In the drawing of the draft, R. E. Ward, as such president, knew that certain funds had been transferred from the Victoria bank to the San Antonio National Bank. He and his bookkeeper, from their books, ascertained the sum on deposit in the San Antonio Bank and issued two drafts approximately covering the funds on deposit with that bank. Upon receipt of the draft for $5,000 drawn to his order, Conn deposited same in the Kirbyville State Bank for collection, and had that bank wire the San Antonio Bank asking it if it would be paid. The reply of the San Antonio Bank that the draft "is good to-day" admits of no interpretation other than that the draft would be paid on presentation if the funds were on hand at the time it was presented. By the telegram from the Kirbyville Bank the San Antonio Bank was fully informed that a draft for $5,000 drawn upon the account of the cattle company, in favor of R. C. Conn, was being accepted by Conn, subject to their approval, and their answer was clearly an acceptance based only on the condition that the funds were on hand at the time it was presented. The question was squarely asked the bank, "will you pay it," and their answer was such as to lead Conn to believe that it would be paid. To permit the San Antonio Bank to stamp with approval the standing of the check, at the very time they must have known that the cattle company was insolvent, and to permit them two weeks later to appropriate the money, would be unequitable and unjust.

By their telegram the bank virtually gave the cattle company a letter of credit for the amount of the draft, if there were sufficient funds to its credit to meet it, and is liable for its payment because it was actually indebted by this deposit to the cattle company. Morse on Banks and Banking, §§ 311 and 405.

The intention of R. E. Ward, when he drew the two drafts, one to Gilbert and the other to Conn, was to appropriate the whole of the funds in the San Antonio Bank, and that bank having been made aware of the Conn draft, and by the telegram from the Kirbyville Bank having had notice brought home to them, they became liable. Corpus Juris, p. 918, § 81 (text) p. 921 (note D).

The case of Elliott v. Bank, 105 Tex. 548, 152 S. W. 808, which involved a special deposit and in which case the Supreme Court held that the suit could not be maintained because the City National Bank of Corpus Christi, the party primarily liable, had not been sued, is cited for the purpose of showing the interpretation put upon a telegram and answer, which we think is applicable here. The telegram of inquiry was: "Will you pay check of D. C. Elliott eighteen hundred ninety dollars. Rush answer." To which the Corpus Christi bank answered: "D. T. Elliott has deposited with us seventeen hundred ninety dollars to pay check drawn by D. C. Elliott favor O. H. Kilpatrick." On presentation payment of the check was refused because the Corpus Christi bank

had been served with a writ of garnishment against the party. Suit was not brought against the bank, but was brought against the drawer and indorser of the check, and the Supreme Court held that as the bank was primarily liable under article 1203, R. S. 1895, suit should first have been brought against that bank. However,, in discussing the language of the bank's telegram replying to the question "will you pay same," Justice Phillips says:

"The rule as to what is necessary to constitute an acceptance by the drawee of a bill of exchange or a check, is thus declared in 1 Daniel on Negotiable Instruments, § 504a: 'In the absence of statutory provision, any words used by the drawee to the drawer or holder, which by reasonable intendment signify that he honors the bill, will amount to such acceptance; though it would be different if the words were addressed to a stranger having no interest in the bill.'

"In Bigelow on Estoppel, 522 the rule is thus stated: 'Any language, it has indeed been said, whether verbal or written, employed by an officer of a banking institution whose duty it is to know the financial standing and credit of its customers, representing that a check drawn upon it is good and will be paid, estops the bank thereafter as against a bona fide holder of the check from denying the want of funds to pay the same.'

"As the writing of the word 'good' by a bank officer, accompanied by his signature, across the face of the instrument ordinarily operates even as a certification of a check (2 Daniel Neg. Inst. § 1606; 1 Morse, Banks and Banking, § 406), we think it must be held that a bank's written communication, upon inquiry, that it holds a deposit to pay a check of a particular description to be drawn upon it, is equivalent to a statement that a check of such description is good and will be honored, and amounts to an acceptance where the person to whom the communication is addressed is thereby induced to discount the check. If it be not regarded as a technical acceptance, such a communication, at all events, amounts practically to a letter of credit against a check of such description, and one, who, for value, takes the check upon the faith of it, is entitled to enforce the liability that it imports as a promise to pay the check. Whilden v. Merchants' & P. Natl. Bank, 64 Ala. 1; 38 Am. Rep. 1."

In the case of New York Life Ins. Co. v. Patterson & Wallace, 35 Tex. Civ. App. 447, 80 S. W. 1058 (writ of error having been denied by the Supreme Court), the Court of Civil Appeals, passing upon the facts of the case, where one Mannering employed Patterson & Wallace to defend him in a criminal case, and the parties having discussed the method of getting certain money out of a Dallas bank, agreed between themselves that Mannering should give them a draft for the money, which was done, and a draft made through and in the name of an El Paso bank for such money; the El Paso bank acting under instructions of Patterson & Wallace, wired the Dallas bank as follows: "Will you pay draft on you by Ward Mannering for two hundred fifty dollars," to which the Dallas bank replied: "Ward Mannering's account is good now for two hundred eighty-three dollars," held as follows:

"There is no doubt that the holder of an unaccepted bank check cannot maintain an action thereon against the bank. House v. Kountze, 17 Tex. Civ. App. 402, 43 S. W. 561; Terry v. Dale (Tex. Civ. App.) 65 S. W. 396. And the simple drawing and delivering a check or draft does not assign the fund against which it is drawn. In this case, however, there was more than merely drawing and delivering a check. The drawer owed the party for whose benefit the checks were drawn the amounts for which they were drawn, and it was agreed by him and them that he would pay to them the aggregate amount of the two checks on his indebtedness to them. He had, prior to the execution and delivery of the checks, informed them that he had funds in the Dallas bank, and desired to pay them out of that fund, and the method of collecting or getting the money out of the bank was discussed, and it was agreed between interveners and the said Mannering that he should issue a check payable to the El Paso bank, so that that bank could collect the amount and pay same over to interveners. Immediately after the first check was issued, interveners had the El Paso bank telegraph the Dallas bank to ascertain whether or not Mannering had funds in that bank, and that bank replied that he had deposited with it $283. Then the said Mannering issued the second check and delivered it to interveners, and they then gave to the said Mannering their receipt for the aggregate amount of the two checks. The legitimate inference from the testimony in the record is that it was intended by the said Mannering to transfer or assign to interveners $275 of the fund he had deposited with the Dallas bank. Interveners gave him credit on their account against him for that amount, and he took from them their receipt for the same, and the checks were issued simply for the purpose of enabling interveners to collect said amount, and not in the ordinary course of business."

The only difference in the facts of that case, when applying the law of that case to this, is: In this case the parties themselves did not have any express agreement as to the method of getting the money out of the bank, but Ward did ascertain his balance in the bank and did by the execution of the two drafts intend to appropriate the funds in the San Antonio Bank. This intention was communicated to the San Antonio Bank when the Kirbyville Bank wired them with reference to the draft and the amount thereof, and when they answered that the check was "good to-day" they thereby accepted such check as an assignment pro tanto of the deposit in the bank.

Our holding herein renders unnecessary discussion of other assignments by plaintiffs in error in their application for writ.

We have also considered the assignments of error of defendant in error filed in the

Court of Civil Appeals, and, not believing that any of them present error, we recommend to the Supreme Court that the judgment of the Court of Civil Appeals be reversed and the judgment of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.