### WEDEGARTNER v. REICHERT et ux.

### No. 2821.

Court of Civil Appeals of Texas.
Tenth District. Waco.

Dec. 16, 1948.

Rehearing Denied March 17, 1949.

Taylor, Cox, Wagner & Adams, of Brownsville, for appellant.

James V. Allred, of Houston, and Renne Allred, Jr., of Austin, for appellees.

LESTER, Chief Justice.

. This suit was instituted in the district court of Cameron County by the appellant, Van Dorn Wedegartner, against O. W. Reichert and wife for the recovery of 41¼ shares of corporate stock in the Southwestern Concrete Pipe Company and for certain dividends collected thereon by the appellees.

Appellant asserted ownership of the stock and dividends by reason of the will of his foster father, Fred H. Wedegartner, deceased, who died on November 8, 1941.

Appellees base their claim to the stock on the ground that the 82½ shares of stock standing in the name of the deceased was community property and that deceased being the owner of only one-half of said stock, under the terms of said will the appellant received only the deceased's one-half of the same, which was 41¼ shares. Appellees also pleaded a family settlement and partition of the estate, by reason of which they contended that appellant waived all right, if any, he had to the stock in question. The appellant, in reply thereto, pleaded that the settlement was made under a mutual mistake of fact, or of mixed law and fact, no consideration and no waiver.

The Southwestern Concrete Pipe Company will be hereinafter referred to as the SWCP Company.

The deceased, at the time of his death, had lived in San Benito, Texas, for several years, and owned a considerable amount of property, some of which was his separate estate and a part of it was community property. He devised his property to the appellant and his widow, Mrs. Mary Wedegartner, whom he married in 1928 and who has since married O. W. Reichert. The disagreement of the parties is based upon Item III. of the will, which reads: "I give to Van Dorn Wedegartner all of the stock which I own in Southwestern Concrete Pipe Company, a private Texas corporation domiciled in San Benito,

Texas; and all of my stock in the Southern Iron Machine Company, a private Texas corporation domiciled in San Benito, Texas."

On November 9, 1942, appellant and Mrs. Reichert signed and forwarded two letters, one to the SWCP Company and one to Dodds & Wedegartner, as follows:

"San Benito, Texas,
November 9, 1942.

Southwestern Concrete Pipe Company,
San Benito, Texas.

Gentlemen:

The undersigned, being the beneficiaries under the will of F. H. Wedegartner, deceased, have fully agreed between themselves, that the stock in your Company issued in the name of decedent constituted the community property of the decedent and the undersigned Mary Wedegartner, and therefore, the said Mary Wedegartner is the owner of one-half of said stock by virtue of same being community property, and the undersigned Van Dorn Wedegartner, under the terms of said will, is the owner of the other one-half interest in said stock, and this instrument shall be evidence of such agreement.

Therefore, by reason of the premises, you are hereby authorized and requested to issue 41¼ shares of said stock to each of the undersigned.

Van Dorn Wedegartner
Mary Wedegartner."

"San Benito, Texas,
November 9, 1942.

Dodds & Wedegartner, Inc.,
San Benito, Texas.

Gentlemen:

The undersigned, being the beneficiaries under the will of F. H. Wedegartner, deceased, have fully agreed between themselves, that the stock in your company issued in the name of the decedent was the separate property of F. H. Wedegartner, and by the provisions of his Will, each of the undersigned is entitled to one-half of said stock; and this instrument shall be evidence of such agreement.

Therefore, by reason of the premises, you are hereby authorized and requested to issue 125 shares of said stock to each of the undersigned.

Van Dorn Wedegartner
Mary Wedegartner."

As of the same date they also executed quit-claim deeds to each other conveying the respective real estate that each had received under the will. At the time the settlement agreement was entered into dividends on this 82½ shares of stock had accumulated in a large sum, which had not been paid for the reason that they had not reached an agreement concerning the ownership of said stock.

A few days after the death of the deceased, Mr. Charles C. Bowie, an attorney of San Benito, read the will in the presence of the appellant and Mrs. Reichert, and after the will was read he asked them if they were satisfied with its provisions and appellant answered that he was. Mrs. Reichert questioned Mr. Bowie about the disposition of the stock in the SWCP Company and it was his opinion that all of the stock went to the appellant under the will. Mrs. Reichert replied, saying that she was satisfied with the will with the exception of the provision disposing of the stock in said company; that she knew that there was some mistake because Mr. Wedegartner had told her that he had intended to divide the stock equally between them; that she did not agree that the will gave to the appellant all of the stock, that Mr. Wedegartner did not intend to leave it all to the appellant, but if the will did give it all to him that it was community property and he had no right to will away her interest in the stock. The appellant spoke up and said that he thought the will gave him all of the stock; that the deceased had told him that he was going to leave it all to him. Mr. Bowie, being of the opinion that the will gave to the appellant all of the stock, wrote a letter to the SWCP Company of date June 29, 1942, advising the company that the appellant had been bequeathed the 82½ shares of stock in said company and authorized the company to transfer the stock to the appellant, but suggested that Mrs. Reichert join in the request in order to evidence the approval of all parties concerned, but Mrs. Reichert refused to give her ap-

proval. All of this the appellant knew long before the letter of November 9, 1942, was executed. Appellant and Mrs. Reichert each testified that prior to the settlement agreement of November 9, 1942, they had many, many conferences over the stock in the SWCP Company; that the appellant always contended that the will gave him all of the stock and she contended that the deceased did not intend to give him all of the stock, or if he did so intend, the stock was community property and the deceased had no right to will her half away. Sometime prior to the letter of November 9th, Mrs. Reichert went to see Mr. Milton West and he advised her that he was of the opinion that the stock was community property and the deceased did not have any right to dispose of her half of it by will. She reported this conversation to the appellant and requested him to go and talk to Mr. West, but he did not go. He testified that he had no reason to doubt her word. The appellant did not talk to any other attorney about the ownership of the stock other than Mr. Bowie, who was of the opinion that the will gave to him all of the stock. Appellant was a First Lieutenant in the Air Corps when the settlement agreement was made and was a Lieutenant Colonel when discharged from the service. He was transferred to the Air Base at Harlingen in April, 1942, and remained there until January, 1943. While there he and his wife lived in Harlingen, about seven miles from San Benito. He visited San Benito on many occasions while there but consulted no other attorney there or elsewhere about his rights under the will of his foster father. He testified that at every base where he was stationed the government maintained officers trained in legal matters to advise individual personnel as to their legal rights, but that he did not consult any of them.

Concerning the settlement agreement the appellant testified that all of the time, from the time the will was read on up to the time he signed the letter to SWCP Company, there was a bona fide dispute and difference of opinion between them as to whether Mrs. Reichert was entitled to one-half of the stock; that she had her opinion and that he had his; that he executed the quit-claim deeds to Mrs. Reichert and she accepted them and that he accepted the quitclaim deeds that Mrs. Reichert executed to him; that at the time he executed the letter to SWCP Company he was still of the opinion that he was entitled to all of the stock but he was convinced that it was community property and thought that his foster father had probably made a mistake and he wanted to do the right thing; that he was "fed up" with the matter and wanted to get it straightened out; that it was the desire of the parties to settle the matter in a friendly and amicable manner; that neither wanted a law suit or squabble over the stock; that he didn't think it would look good for the foster son and widow of the deceased to be squabbling over the estate; that he signed the letter and deeds willingly and in good faith, believing that it ended the difference between them, and that that was his purpose in signing the letter.

Mrs. Reichert's testimony coincides with the testimony given by appellant in every particular as to her claim to the 41¼ shares of stock from the time the will was first read up to and until the time the agreement was made. She testified that her husband had told her that he was going to divide the stock equally between her and the appellant; that she did not believe that all of the stock went to the appellant under the will, but if it did, her husband did not so intend, or if he did intend to leave all of the stock to him, that her husband had no right to dispose of her community interest in the stock and she was entitled to one-half thereof; that she asserted her claim to the stock in good faith in the honest belief that she was entitled to it; that she took a copy of the will and other papers to Congressman Milton West at Brownsville, who, after reading and studying them, advised her that it was his opinion that the stock was community property and that one-half of it was hers; that Mr. West also advised her that she had other community property devised in the will and that she could recover it if she wanted to stand on her rights; that she communicated what Mr. West told her to the appellant and requested him to go and talk to Mr. West but he declined to do so; that she would not

308

have executed the deeds to the appellant or the letter to Dodds & Wedegartner if the appellant had not agreed that she could have the 41¼ shares of stock; that she and the appellant never had any discussion about any court decision as it never reached that point, but if he had not agreed she would have investigated further and asked for a court decision on her 41¼ shares; that they didn't want a law suit but desired to settle their differences in a friendly manner; that she made the settlement in good faith, thinking that it was all brought to an end when they executed the papers.

Mr. Charles C. Bowie, who drew up the settlement papers, testified that on account of the length of time that had transpired, he could not recall the different positions taken by the parties, but he did express surprise when informed of this suit being filed, saying that he thought it had been settled.

The court submitted the case to the jury on special issues and in reply thereto the jury found: (1) that appellant, on or about November 9, 1942, believed that Fred H. Wedegartner could not by his will devise to him his widow's community interest in the 82½ shares of stock in the SWCP Company; (2) that he would not have consented to Mrs. Reichert's receiving the 41¼ shares of said stock but for such belief; (3) that on or about November 9, 1942, there was not a bona fide dispute between the appellant and Mrs. Reichert as to the rights of the parties under the will as to the SWCP Company stock; (4) that on or about November 9, 1942, there was not a bona fide dispute between the parties as to the meaning or legal effect of the will as applied to the SWCP Company stock; (5) that on or about November 9, 1942, there was not a bona fide dispute between the parties as to the intention of Fred H. Wedegartner as to the disposition of the 82½ shares of stock in said corporation; (6) that the appellant had not had a reasonable opportunity to learn all the facts and to ascertain the law applicable to his legal rights under the will of the deceased; (7) that the parties did not intend to settle and partition the estate of the deceased by executing the letters and deeds dated November 9, 1942;

(8) that Mrs. Reichert would have executed the deeds dated November 9, 1942, and the letter addressed to Dodds & Wedegartner, Inc. of the same date if appellant had not executed the letter addressed to SWCP Company dated November 9, 1942; (9) that Mrs. Reichert would not have sought further legal advice as to the meaning of the will and her rights thereunder and would not have seriously considered demanding a court test to determine such meaning and rights, if any, if the appellant had not signed the letter dated November 9, 1942, addressed to the SWCP Company; (10) that Mrs. Reichert did not orally inform the appellant that she would not urge any community or other claim, if any, to any other community property than the 41¼ shares of the SWCP Company stock provided appellant would concede her right, if any, to said 41¼ shares of said stock; (11) that appellant, on or about November 9, 1942, did not intend to waive his claim, if any, to the 41¼ shares of stock in SWCP Company involved in this suit; (12) that the letter dated November 9, 1942, addressed to the SWCP Company was not signed for the purpose of settling amicably a family dispute between the parties concerning their rights under the will of the deceased.

Appellees filed their motion for judgment non obstante veredicto, which the court granted, and appellant has appealed.

Appellant presents four points of error, as follows:

"First Point: The court should not have rendered judgment N. O. V. on ground that plaintiff agreed for defendants to have stock in controversy when jury on sufficient evidence found that agreement was made under a mistake as to antecedent personal property rights.

"Second Point: The court should not have rendered judgment N. O. V. on ground that plaintiff agreed for defendants to have stock in controversy when jury on sufficient evidence found that there was no consideration for the agreement.

"Third Point: The court should not have rendered judgment N. O. V. on ground that as part of a family settlement plaintiff agreed for defendants to have

309

stock in controversy when jury on sufficient evidence found that there was no family settlement.

"Fourth Point: The court should not have rendered judgment N. O. V. on ground that plaintiff waived his right to the stock in controversy when jury on sufficient evidence found that he did not waive his rights."

■ Voluntary compromise settlements, where doubts exist with respect to individual rights among members of the same family, and all the parties, instead of ascertaining and enforcing their mutual rights and obligations which are yet undetermined and uncertain, or where a claim is asserted in good faith by one or more of the parties and they intentionally put an end to all controversy by a voluntary transaction in the way of a compromise, are highly favored by courts of equity. They will not be disturbed for any ordinary mistake either of law or fact. Where all parties have the same knowledge, or means of obtaining knowledge, in respect to the circumstances concerning their rights, and there is no fraud, misrepresentation, concealment or conduct otherwise inequitable on the part of the other party, voluntary settlements entered into should be upheld, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the dispute been brought before it for decision. Vol. 3 Pom.Eq.Jur., p. 315 et seq., Sec. 850; 15 C.J.S., Compromise and Settlement, § 36-a, page 757; Gilliam v. Alford et al., 69 Tex. 267, 6 S.W. 757.

There is no contention on the part of the appellant and the record reflects no ground to sustain the fact that Mrs. Reichert concealed any facts in her possession concerning appellant's rights in the estate here involved, or that she made any misrepresentation whatsoever concerning them or practiced any fraud upon him, or that her claim that the stock in question was community property and that she was entitled to one-half thereof or that her husband did not intend to devise all of the stock to the appellant was not honestly and in good faith

made by her. The appellant knew that Mr. Charles C. Bowie, who had represented his father during his lifetime and whose opinion he regarded most highly, was of the opinion that all of the stock went to him under the will. He knew Mr. West had advised Mrs. Reichert that it was his opinion that the stock was community property and her husband didn't have the right to will her part away. He testified that he realized that what Mr. West told her was merely his opinion. She tried to get him to go and talk to Mr. West but he refused to do so, saying he had no reason to doubt her word, and he failed to consult any other attorney except Mr. Bowie during the twelve months that this controversy continued, although he had ample opportunity. Appellant says that he was convinced that the stock was community property and that his foster father probably made an error and he was willing to concede to Mrs. Reichert's opinion and give her the stock; that he made the settlement agreement willingly, voluntarily and in good faith, believing that when he signed the letter of November 9, 1942, to the SWCP Company that it would bring to an end the dispute between them concerning the stock, and that that was his purpose in signing the same.

■ In view of the uncontradicted evidence, we are of the opinion that just because the appellant believed when he executed the settlement agreement that his foster father could not by his will devise to him his widow's community interest in the stock in question, and that he would not have consented to her receiving the 41¼ shares but for such belief, are not sufficient grounds for setting aside the settlement agreement solemnly, willingly and voluntarily entered into by both parties concerned. If the evidence shows without dispute that there was a bona fide dispute between the parties as to their legal rights under the will, and that Mrs. Reichert was asserting her claim in good faith in the honest belief that she was entitled to the 41¼ shares of stock, and in the absence of fraud, misrepresentation or concealment or other misleading incident, and both having the same knowledge or means of obtaining knowledge concerning the circumstances involving their rights, under such state of

facts, if the parties willingly and in good faith entered into a family compromise agreement by which they fully intended to put an end to their differences, then the rule is that the courts will not inquire into the adequacy of the consideration. If it is sufficient to support the transaction, the mutual agreement for the compromise is in itself a valuable consideration and sufficient to sustain the contract. 9 T.J. p. 339 et seq., Secs. 6, 7, 8 and 9; Davenport v. Shepherd, Tex.Civ.App., 197 S.W. 729; Scott v. Lott, Tex.Civ.App., 247 S.W. 685; Grisham v. Ward, Tex.Civ.App., 179 S.W. 893; Camoron v. Thurmond, 56 Tex. 22, 33–35. Besides, the appellant's own testimony reveals ample consideration to sustain the agreement. The law is well settled that a litigant is bound by his positive, unexplained and unmodified admissions in his testimony. His testimony is governed by different rules than those which are applied to witnesses who are not litigants. Southern Surety Co. v. Inabnit et al., Tex. Civ.App., 1 S.W.2d 412; Stanolind Oil & Gas Co. v. State et al., 136 Tex. 5, 145 S. W.2d 569; Kimmell v. Tipton, Tex.Civ. App., 142 S.W.2d 421, point on page 429; Kokernot v. Gilstrap, Tex.Civ.App., 180 S. W.2d 183; Slay v. Mary Coutts Burnett Trust, Tex.Civ.App., 180 S.W.2d 480, point on page 502; Happ v. Happ, Tex.CivApp., 160 S.W.2d 227, point on page 230; Clack v. Williams, Tex.Civ.App., 189 S.W.2d 503.

■ The testimony of the appellant can be interpreted in no other light than that he admitted all material elements to establish and sustain the settlement agreement, and also admitted that at the time he executed the letter to the SWCP Company and other instruments of date November 9th, he intended to waive all claim to the 41¼ shares of stock issued to Mrs. Reichert. If his testimony can be construed as not admitting each and every element to sustain the agreement, the testimony of appellant, together with the clear, positive and uncontradicted testimony of Mrs. Reichert, removes all doubt as to a complete and valid settlement agreement. Ordinarily, the uncontradicted testimony of an interested party only creates an issue of fact for the court or jury, but there is an exception to this general rule. If the testimony of a party to the cause who is interested in the subject matter of the suit is clear, direct, positive and free from contradictions and inconsistencies, and there are no circumstances to cast any suspicion upon it, then such testimony is to be taken as true as a matter of law and not merely as creating an issue of fact. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904; Springfield Fire & Marine Ins. Co. v. Wm. Cameron & Co., Tex.Civ. App., 96 S.W.2d 788; Hoffer v. Eastland Nat. Bank, Tex.Civ.App., 169 S.W.2d 275; Biggs v. Hinds, Tex.Civ.App., 177 S.W.2d 288; Robelin v. Brooke, Tex.Civ.App., 201 S.W.2d 98. The testimony of Mrs. Reichert meets the above exception to the general rule, and her testimony is strongly corroborated by the testimony of the appellant and other circumstances in the case. The jury not only disregarded her positive testimony but they also disregarded the clear and positive testimony of appellant in order to render a verdict in his favor. This, we are of the opinion they had no right to do.

We have read the many authorities cited by appellant and for the sake of brevity we do not discuss them, but we are of the opinion that they are not applicable to the facts of this case.

Finding no reversible error, the judgment of the trial court is therefore affirmed.