MAYO SHELL CORPORATION, Appellant,

v.

LOTZ TOWING COMPANY, Appellee.

No. 12835.

Court of Civil Appeals of Texas.

Galveston.

·May 5, 1955.

Rehearing Denied May 26, 1955.

Bracewell, Tunks, Reynolds & Patterson and Joe H. Reynolds, Houston, for appellant.

DeLange, Hudspeth & Pitman, Albert J. DeLange, C. M. Hudspeth and Eugene J. Pitman, Houston, for appellee.

CODY, Justice.

This is a suit on open account brought by the Lotz Towing Company to recover

from the Mayo Shell Corporation for goods, wares and services. By written stipulation the parties agreed that defendant owed the plaintiff $6,233,15 as of March 13, 1952; further stipulated that the only issue to be tried between the parties was whether the defendant was to recover as an offset against plaintiff the value of a certain pump and engine which defendant had placed on board of plaintiff's dredge, Juno; and in the stipulation it was agreed that defendant was seeking to recover in conversion on the ground that plaintiff had sold or converted the aforesaid equipment. Subsequently the defendant filed a trial amendment alleging in the alternative that at the time the pump and engine were purchased by defendant it entered into an agreement with plaintiff, acting through E. G. Lotz, by which defendant would sell and plaintiff buy said equipment for $5,680.

The case was tried to the court without a jury. Plaintiff introduced the written stipulation above referred to and rested. Defendant introduced the testimony of but one witness, Mr. McCoy, its president, and then rested. The record reflects that when defendant rested, plaintiff's counsel stated to the court, "First, we ask for an instructed verdict." This was followed by the filing of a written motion for instructed verdict.

In our opinion plaintiff actually, as well as in contemplation of law, reserved the right to introduce evidence to rebut defendant's evidence if the court refused to sustain what in law is the legal equivalent to a demurrer to defendant's evidence. The court did sustain, according to the record, a demurrer to defendant's evidence and denied defendant recovery by way of offset, and rendered judgment against defendant thereon. Thereafter defendant requested, and the court filed, conclusions of fact and law. The case is, accordingly, here, not on whether the court erred in sustaining a demurrer to the evidence, but on whether there was sufficient evidence to sustain the court's findings of fact. And, as will appear from defendant's points upon which it predicates this appeal, defendant is seeking primarily a reversal and rendition of the judgment, and in any case is seeking a reversal of the judgment because the evidence was such as to compel the court to find an offset on defendant's behalf in the sum of $5,680.

Defendant's points urged here are: (1) that the evidence as a matter of law shows that defendant was entitled to an offset for $5,680, (2) that the clear, positive and uncontradicted evidence shows that defendant was entitled to an offset of $5,680, (3) that it was stipulated that the dredge Juno was owned by plaintiff, upon which defendant placed the equipment for which defendant claims an offset, (4) that the evidence compelled the finding that there was a sale of said equipment by defendant to plaintiff, (5) that the evidence compelled the finding that E. G. Lotz (the president of the Lotz Towing Company) was the agent of plaintiff towing company.

We must sustain the court's judgment, as will hereafter appear.

Among the court's findings of fact were these: (5) that there was no amount owing by plaintiff to defendant, (6) that there was no agreement of sale or purchase of, and no actual sale or purchase of, any pump or engine between defendant and plaintiff, (6(a) that there was no proof that E. G. Lotz (president of the Lotz Towing Company) was an agent of plaintiff concerning any material issue herein at any material time, (7) that plaintiff did not sell or convert any pump or engine belonging to defendant, (8) that there was no illegal use or possession of any pump or engine by plaintiff.

Mr. McCoy, president of defendant corporation, testified that he first became acquainted with Mr. Lotz when Mr. Lotz was working for another Shell company in Houston. When that company went out of business, Mr. Lotz begain his dredging business and Mr. McCoy further testified that he lent him $5,000 at that time. His interest in Mr. Lotz and in the Lotz Towing Company was to get Shell to be used in defendant's business. From Mr. McCoy's

testimony it is clear that his corporation ran a large running account with plaintiff. Upon defendant's books the account was run in the name of Lotz rather than in the name of the Lotz Towing Company. The charges which were made against plaintiff were for repairs made for plaintiff in defendant's shops. These charges were used as offsets against the charges of plaintiff for Shell and services furnished defendant. From time to time defendant would pay to Mr. Lotz amounts in various sums as needed, such as $2,000 or $5,000. When Mr. Lotz first went into business he maintained the office of his company at his home, but later he used the offices of defendant, and later on he established his own office. Sometime around 1951 defendant wanted to get cleaner Shell than plaintiff had been delivering and so defendant purchased the aforesaid equipment and Mr. Lotz installed it on the Juno. Defendant paid therefor the sum of $5,680. In its pleading defendant alleged that it retained the title to said equipment. It handled on its books the charge of $5,680 as it had handled other charges against plaintiff.

We fail to find any testimony which compelled the court to find that there was any agreement on the part of plaintiff to purchase the equipment. Indeed, under the evidence the court could have concluded that the equipment was supplied to plaintiff for the mutual benefit of the parties, namely, that the Shell dredged by plaintiff could be washed cleaner to meet the requirements of defendant. It may be that the evidence was sufficient to compel the court to find that Mr. Lotz went out of business and that subsequently the dredge was removed from the vicinity of Galveston Bay to the Beaumont area, but there was no evidence to compel the conclusion that the Juno was sold, if indeed there was any evidence sufficient to sustain such conclusion. And there was no evidence to show that the equipment was so affixed to the Juno as to become a component part thereof. Mr. McCoy testified that after Mr. Lotz went out of business he told Mr. McCoy that he, Mr. McCoy, would probably get paid for the equipment.

■ Upon this appeal defendant assumed the burden that it must establish that the court was compelled, from the evidence, to find in its favor upon its claim for the offset. Defendant invoked the rule: "If the testimony of a party to the cause who is interested in the subject matter of the suit is clear, direct, positive and free from contradictions and inconsistencies, and there are no circumstances to cast any suspicion upon it, then such testimony is to be taken as true as a matter of law and not merely as creating an issue of fact. (Authorities.)" Wedegartner v. Reichert, Tex.Civ.App., 218 S.W.2d 304, 310.

■ The burden was on defendant to establish that there was some amount owed by plaintiff to defendant on said equipment, or that there had been such an exercise of dominion by plaintiff over the equipment as to constitute a conversion of it. The evidence was not sufficient to compel the court to find a conversion of the equipment, nor an agreement entered into between the parties at the time the equipment was installed in the Juno, by which defendant was to be paid the sum of $5,680. Defendant made no proof which would have compelled the court to find that defendant doesn't still own the equipment, wherever it may be. Mere proof that it was in possession of plaintiff at one time with defendant's consent is not sufficient to compel a finding of conversion. There is no contention that defendant has ever demanded the surrender of the equipment and that plaintiff refused.

■ As appears above, we have appraised the evidence as not being such as to compel the court's finding in defendant's favor upon its claimed offset. The question is not before us of whether the evidence is such as would have supported a finding by the court from the evidence in defendant's favor, and so we do not pass thereon.

We affirm the judgment of the court.